WALLING, ADMINISTRATOR OF THE WAGE AND
HOUR DIVISION, U. S. DEPT. OF LABOR, *v.*
JACKSONVILLE PAPER CO.

No. 336.   Argued November 19, 20, 1942.—Decided January 18, 1943.

*Mr. Robert L. Stern,* with whom *Solicitor General Fahy* and *Messrs. Irving J. Levy, Mortimer B. Wolf,* and *Peter Seitz* were on the brief, for petitioner.

*Mr. Louis Kurz* for respondent.

*Mr. Charles B. Rugg* filed a brief on behalf of the American Retail Federation, as *amicus curiae,* urging reversal in part.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is a suit brought by the Administrator to enjoin respondent from violating provisions of the Fair Labor Standards Act. 52 Stat. 1060, 29 U. S. C. § 201. Respondent is engaged in the wholesale business, distributing paper products and related articles. Its business covers a large area embraced within a number of states in the southeastern part of the country. The major portion of the products which it distributes comes from a large number of manufacturers and other suppliers located in other states and in foreign countries. Five of respondent's twelve branch houses deliver goods to customers in other states and it is not contended that the Act does not apply to delivery employees at those establishments. The sole issue here is whether the Act applies to employees at the seven other branch houses which, though constantly receiving merchandise on interstate shipments and dis-

tributing it to their customers, do not ship or deliver any of it across state lines.

Some of this merchandise is shipped direct from the mills to respondent's customers. Some of it is purchased on special orders from customers, consigned to the branches, taken from the steamship or railroad terminal to the branches for checking, and then taken to the customer's place of business. The bulk of the merchandise, however, passes through the branch warehouses before delivery to customers. There is evidence that the customers constitute a fairly stable group and that their orders are recurrent as to the kind and amount of merchandise. Some of the items carried in stock are ordered only in anticipation of the needs of a particular customer as determined by a contract or understanding with respondent. Frequently orders for stock items whose supply is exhausted are received. Respondent orders the merchandise and delivers it to the customer as soon as possible. Apparently many of these orders are treated as deliveries from stock in trade. Not all items listed in respondent's catalogue are carried in stock but are stocked at the mill. Orders for these are filled by respondent from the manufacturer or supplier. There is also some evidence to the general effect that the branch manager before placing his orders for stock items has a fair idea when and to whom the merchandise will be sold and is able to estimate with considerable precision the immediate needs of his customers even where they do not have contracts calling for future deliveries.

The District Court held that none of respondent's employees in the seven branch houses in question were subject to the Act. The Circuit Court of Appeals reversed. 128 F. 2d 395. (1) It held that employees who are engaged in the procurement or receipt of goods from other states are "engaged in commerce" within the meaning of § 6 (a) and § 7 (a) of the Act. (2) It also held that where

respondent "takes an order" from a customer and fills it outside the state and the goods are shipped interstate "with the definite intention that those goods be carried at once to that customer and they are so carried, the whole movement is interstate" and the entire work of delivery to their final destination is an employment "in commerce." Those were the only types of transactions which the court held to be covered by the Act.

The Administrator contends, in the first place, that under the decision below any pause at the warehouse is sufficient to deprive the remainder of the journey of its interstate status. In that connection it is pointed out that prior to this litigation respondent's trucks would pick up at the terminals of the interstate carriers goods destined to specific customers, return to the warehouse for checking and proceed immediately to the customer's place of business without unloading. That practice was changed. The goods were unloaded from the trucks, brought into the warehouse, checked, reloaded, and sent on to the customer during the same day 'or as early as convenient. The opinion of the Circuit Court of Appeals is susceptible of the interpretation that such a pause at the warehouses is sufficient to make the Act inapplicable to the subsequent movement of the goods to their intended destination. We believe, however, that the adoption of that view would result in too narrow a construction of the Act. It is clear that the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce.[1] There is no indication

---

[1] See for example the statement by Senator Borah speaking for the Senate conferees on the Conference Report, ". . . if the business is such as to occupy the channels of interstate commerce, any of the employees who are a necessary part of carrying on that business are within the terms of this bill, and, in my opinion, are under the Constitution of the United States." 83 Cong. Rec., 75th Cong., 3d Sess., Pt. 8, p. 9170.

(apart from the exemptions contained in § 13) that, once the goods entered the channels of interstate commerce, Congress stopped short of control over the entire movement of them until their interstate journey was ended. No ritual of placing goods in a warehouse can be allowed to defeat that purpose. The entry of the goods into the warehouse interrupts but does not necessarily terminate their interstate journey. A temporary pause in their transit does not mean that they are no longer "in commerce" within the meaning of the Act. As in the case of an agency (cf. *De Loach* v. *Crowley's Inc.,* 128 F. 2d 378) if the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain "in commerce" until they reach those points. Then there is a practical continuity of movement of the goods until they reach the customers for whom they are intended. That is sufficient. Any other test would allow formalities to conceal the continuous nature of the interstate transit which constitutes commerce.

Secondly, the Administrator contends that the decision below excludes from the category of goods "in commerce" certain types of transactions which are substantially of the same character as the prior orders which were included. Thus it is shown that there is a variety of items printed at the mill with the name of the customer. It is also established that there are deliveries of certain goods which are obtained from the manufacturer or supplier to meet the needs of specified customers. Among the latter are certain types of newsprint, paper, ice cream cups, and cottage cheese containers. The record reveals, however, that the goods in both of these two categories are ordered pursuant to a preëxisting contract or understanding with the customer. It is not clear whether the decision of the Circuit Court of Appeals includes these two types of transactions in the group of prior orders which it held

were covered by the Act. We think they must be included. Certainly they cannot be distinguished from the special orders which respondent receives from its customers. Here also, a break in their physical continuity of transit is not controlling. If there is a practical continuity of movement from the manufacturers or suppliers without the state, through respondent's warehouse and on to customers whose prior orders or contracts are being filled, the interstate journey is not ended by reason of a temporary holding of the goods at the warehouse. The fact that respondent may treat the goods as stock in trade or the circumstance that title to the goods passes to respondent on the intermediate delivery does not mean that the interstate journey ends at the warehouse. The contract or understanding pursuant to which goods are ordered, like a special order, indicates where it was intended that the interstate movement should terminate. Numerous authorities are pressed on us for the contrary view and for the conclusion that when the goods enter the warehouse, they are no longer "in commerce." But as we stated in *Kirschbaum Co.* v. *Walling,* 316 U. S. 517, 520–521, decisions dealing with various assertions of state or federal power in the commerce field are not particularly helpful in determining the reach of this Act.

Finally, the Administrator contends that most of the customers form a fairly stable group, that their orders are recurrent as to the kind and amount of merchandise, and that the manager can estimate with considerable precision the needs of his trade. It is therefore urged that the business with these customers is "in commerce" within the meaning of the Act. Some of the instances to which we are referred are situations which we have discussed in connection with goods delivered pursuant to a prior order, contract, or understanding. For the reasons stated they must be included in the group of transactions held to be "in commerce." As to the balance, we do not think

the Administrator has sustained the burden which is on a petitioner of establishing error in a judgment which we are asked to set aside. We do not mean to imply that a wholesaler's course of business based on anticipation of needs of specific customers, rather than on prior orders or contracts, might not at times be sufficient to establish that practical continuity in transit necessary to keep a movement of goods "in commerce" within the meaning of the Act. It was said in *Swift & Co.* v. *United States,* 196 U. S. 375, 398, that "commerce among the States is not a technical legal conception, but a practical one, drawn from the course of business." While that observation was made apropos of the constitutional scope of the commerce power, it is equally apt as a starting point for inquiry whether a particular business is "in commerce" within the meaning of this Act. We do not believe, however, that on this phase of the case such a course of business is revealed by this record. The evidence said to support it is of a wholly general character and lacks that particularity necessary to show that the goods in question were different from goods acquired and held by a local merchant for local disposition.

In this connection we cannot be unmindful that Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states. S. Rep. No. 884, 75th Cong., 1st Sess., p. 5; 83 Cong. Rec., 75th Cong., 3d Sess., Pt. 8, p. 9169. Moreover as we stated in *Kirschbaum Co.* v. *Walling, supra,* p. 522–523, Congress did not exercise in this Act the full scope of the commerce power. We may assume the validity of the argument that since wholesalers doing a local business are in competition with wholesalers doing an interstate business, the latter would be prejudiced if their competitors were not required to comply with the same labor standards. That consideration, however, would be pertinent only if the Act extended to businesses or transactions "affecting com-

merce." But as we noted in the *Kirschbaum* case the Act did not go so far. It is urged, however, that a different result obtains in case of wholesalers. The argument is based on the fact that the Act excepts from § 6 and § 7 "any employee employed in a . . . local retailing capacity" (§ 13 (a) (1)) and "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." § 13 (a) (2). Since retailers are excluded by reason of these express provisions, it is thought that the inclusion of wholesalers should be implied. There is, however, no indication in the legislative history that but for the exemption of retailers it was thought that all movement of goods from manufacturers to wholesalers and on to retailers would be "in commerce" within the meaning of the Act, where the wholesalers and retailers were in the same state. It is quite clear that the exemption in § 13 (a) (2) was added to eliminate those retailers located near the state lines and making some interstate sales. 83 Cong. Rec., 75th Cong., 3d Sess., Pt. 7, pp. 7281–7282, 7436–7438.[2] And the exemption for retailers contained in § 13 (a) (1) was to allay the fears of those who felt that a retailer purchasing goods from without the state might otherwise be included. *Id.* Hence we cannot conclude that all phases of a wholesale business selling intrastate are covered by the Act solely because it makes its purchases interstate. The use of the words "in commerce" entails an analysis of the various types of transactions and the particular course of business along the lines we have indicated.

The fact that all of respondent's business is not shown to have an interstate character is not important. The applicability of the Act is dependent on the character of the employees' work. *Kirschbaum Co.* v. *Walling, supra,*

---

[2] And see Joint Hearings, Senate Committee on Education and Labor, House Committee on Labor, 75th Cong., 1st Sess., on S. 2475 and H. R. 7200, Pt. 1, p. 35.

p. 524. If a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act. Here as in other situations (*Kirschbaum Co.* v. *Walling, supra,* p. 523) the question of the Act's coverage depends on the special facts pertaining to the particular business. The Circuit Court of Appeals remanded the cause to the District Court so that new findings could be made and an appropriate decree be framed. Whether additional evidence must be taken on any phase of the case so that a decree may be drawn is a question for the District Court. We merely hold that the decision of the Circuit Court of Appeals as construed and modified by this opinion states the correct view of the law. As so modified, the judgment below is

*Affirmed.*