The plaintiff seeks to recover the sum of $266.40, with legal interest thereon from October 8, 1940, for what he contends is the deficiency in his wages as an employee of the defendant company from October *Page 469 
24, 1938, to August 18, 1939. He alleges that during said period he was employed by the St. Landry Wholesale Grocery Company, a subsidiary of the Consolidated Companies, Inc., in the capacity of a night watchman and affixing stamps on tobacco packages sold by said company; that said company is engaged in the wholesale distribution of groceries, household commodities and utensils in the State of Louisiana; that most of the articles and products sold at wholesale by this company are purchased outside this State and brought into the State for re-distribution among its customers, and the company is engaged in commerce within the meaning of the Federal Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The claim is based on a failure to pay the minimum wages and overtime provided for in the above Act of Congress.
The case was submitted on an agreed statement of facts, and the trial judge dismissed the suit. Plaintiff has appealed.
We quote the pertinent part of the agreed statement of facts wherein it is stipulated:
"That the said Consolidated Companies, Inc. owns and operates a branch place of business designated and known as the St. Landry Wholesale Grocery Company located in the City of Opelousas, Parish of St. Landry, Louisiana; that through its said branch, merchandise is sold and delivered at wholesale from the place of business of said branch to customers solely within the State of Louisiana, largely in the territory surrounding the Parish of St. Landry, Louisiana, and from the general stock of merchandise of said branch located in its warehouse or place of business so located; that a large portion of the merchandise so sold and delivered by and through said branch and from its place of business at Opelousas, Parish of St. Landry, State of Louisiana, is purchased outside the State of Louisiana and delivered at the warehouse or place of business of said branch in the ordinary course of business; that all of said merchandise so purchased and sold first comes to rest at the place of business of said branch and is assessed and taxed under the laws of the State of Louisiana.
"That no effort is made to make sales outside of the State of Louisiana, and no purchases of merchandise were made with the intent to sell outside of the State of Louisiana; that no goods were purchased by said branch to fill orders previously taken from retail stores; that all sales of merchandise are made from the stock of merchandise kept or stored at the place of business of said branch; that stocks of merchandise are purchased from time to time to meet the estimated requirements of the trade, but at such times and in such quantities as the condition of the market indicates is most advantageous to the branch; that the branch manager has full discretion in this connection, and on many occasions, particularly as regards goods of a seasonable character, purchases several months' requirements. * * *
"That the character of the service rendered by the plaintiff under his employment was as follows: To remain at the business place of the St. Landry Wholesale Grocery Company during the night time; that no special time was set for him to go upon or leave the premises; that he had no time clock to punch; that when he first arrived on the premises at night he would look around outside the building to see if everything was all right, and if he heard a noise during the night he would investigate; if there were tobacco to be stamped, he would stamp it; that the tobacco to be stamped was made accessible to him in the office of the wholesale store building, and after being stamped, was returned on the following morning to the stock of merchandise in the store from which sales were made; that he stamped tobacco on an average of three to four hours a night; that during the time he had no tobacco to stamp he passed the time by sleeping, reading or walking around as he desired; there was a fan, light and heat in the office available for his use; that he had a key to the door of the office, and could come and go as he willed; that plaintiff rendered no other services whatsoever to the defendant except the services here stated."
It is further stipulated that if the plaintiff in rendering the services at defendant's branch store was not engaged in commerce within the meaning of the Fair Labor Standards Act of Congress, the defendant is not indebted unto plaintiff in any amount; but, on the other hand, if he was engaged in commerce within the meaning of said act, the defendant owes him the amount claimed in his petition.
The above mentioned act of Congress, approved June 25, 1938, 29 U.S.C.A. § 201 *Page 470 
et seq., provides in Section 6 (a) that every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce certain minimum hourly rates of pay as set forth in the section, and provides in Section 7 (a) for maximum hours of labor and for the payment of overtime by the employer to such employees. As it is not contended that the plaintiff was engaged in the production of goods for commerce, the question presented is whether or not he was engaged in commerce within the meaning and intendment of the Act. "Commerce" as defined by Section 3 (b) of the Act means trade, commerce, transportation, transmission or communication among the several states or from any state to any place outside thereof.
Numerous cases are cited by counsel on both sides in support of their respective contentions, the plaintiff contending that under the above state of facts he does come under the terms of the act, and the defendant contending that he does not. We do not deem it necessary to cite or discuss any cases other than the two recent cases decided by the United States Supreme Court in January of this year; viz, Walling v. Jacksonville Paper Company, 63 S.Ct. 332, 87 L.Ed. ___, and Higgins v. Carr Brothers Company, 63 S.Ct. 337, 87 L.Ed. ___.
In the first cited case, the court held that an employee of a distributor of merchandise purchased through interstate channels and delivered to customers wholly within the state in which the business of the distributor was located came within the act. However, in that case, the facts show that the merchandise was mostly bought on special and recurrent orders from a group of customers, or in anticipation of the special needs of customers, and, in some instances, the merchandise was shipped direct from the mills to the customer. While most of the merchandise was taken from the interstate carrier, checked and unloaded at the distributor's warehouse, it was immediately thereafter sent on and delivered to the customers for whom it was ordered. The court held that this pause or temporary stoppage at the distributor's place of business did not have the effect of taking the merchandise out of its flow in the channels of interstate commerce; that its continuity in the channels of interstate commerce was not thereby affected. It will be seen that the situation in that case as to the manner and method of purchasing, selling and delivering the merchandise was entirely different from that shown to be the situation in the present case.
In the other cited case, the situation was almost identical with the facts as shown by the stipulation made in the present case as quoted above. The facts as disclosed by the opinion in the case of Higgins v. Carr Brothers Company, supra, were as follows:
The employer (the wholesaler) purchased its merchandise from local producers and from dealers in other states, had this merchandise delivered by rail or truck to its place of business, unloaded it into its store or warehouse, and from there sold and delivered it to the retail trade. The wholesaler owned all of its merchandise and made its own deliveries to its customers within the state in which its business was located. It made no sales on commission nor on orders with shipments direct from the manufacturer or producer to the retail purchaser. The plaintiff in that case, Higgins, was employed as night shipper putting up orders and loading trucks for delivery to retail dealers, or driving a truck distributing merchandise to the local trade.
The court differentiated that case from the other cited case and held that Higgins was not engaged in commerce within the meaning of the Fair Labor Standards Act of Congress. In the present case, plaintiff Breaux stands in almost precisely the same position as did Higgins in the cited case, and following the decision in that case, we are bound to hold that the plaintiff in the present case does not come within the provisions of the Act and cannot recover thereunder.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of plaintiff in both courts. *Page 471