## UNITED STATES v. BERKE CAKE CO., Inc., et al.

### No. 39222.

District Court. E. D. New York.

July 1, 1943.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Mario Pittoni, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for plaintiff.

Scribner & Miller, of New York City (Mark Hyman, of New York City, of counsel), for defendants Berke Cake Co., Inc., and others.

Louis Halle, of New York City (Louis Halle, of New York City, of counsel), for defendant Charles Urban.

Markewich, Rosenhaus & Markewich, of New York City (Samuel Markewich, of New York City, of counsel), for defendants Harry Meth and Joseph Bless.

BYERS, District Judge.

Demurrer to indictment.

The defendants in this case are the same as those referred to in decision of June 18 1943, sustaining the demurrer in cause No. 39178.

The object of this indictment is to allege a conspiracy, 18 U.S.C.A. § 88, to violate Sections 207 and 215, 29 U.S.C.A., Fair Labor Standards Act of 1938, concerning the employees of the corporations involved.

The allegation is that "said corporations, * . * * employed and suffered and permitted to work in the manufacture and production and in processes and occupations necessary to the manufacture and production of said baking and confectionery products numerous persons who were employees within the meaning of the Fair Labor Standards Act of 1938."

It is to be observed that a conviction under this indictment could involve a heavier penalty than a conviction for violating the statute itself. See 29 U.S.C.A. § 216.

The conspiracy as alleged is that the Berke Cake Co., Inc., and the E. L. K. Baking Co., Inc., and the individuals, Irving Berke, an officer of both corporations, Moe Gertner and Charles Urban, supervisory employees of both corporations, Harry Meth, business agent of Local 51, Bakery

948

and Confectionery Workers International Union of America, and Joseph Bless, financial secretary of said Local 51, and other persons named, and others whose names were unknown, from October 24, 1938, to June 1, 1943, conspired and agreed together that the corporations and Irving Berke "would pay to their employees wages at rates less than one and one-half times their regular rates of pay for all hours worked in excess of the applicable maximum statutory hours set forth in Section 207, Title 29 U.S.C., and did further combine, conspire, ·confederate and agree together to * * * intimidate, * * *, and discharge, any of the aforesaid employees that filed any complaint or instituted or caused to be instituted any proceeding under or related to the Fair Labor Standards Act of 1938; the purpose and plan of the said conspiracy being that the defendants * * * (the corporations and Irving Berke) would pay their employees wages at rates less than time and one-half their regular rates of pay for all hours worked in excess of the applicable maximum statutory hours set forth in Section 207, Title 29 U.S.C.; the purpose and plan of the said conspiracy further being that as a result of the injury, oppression, * * *, discrimination against, and discharge of the employees as aforesaid, the said employees, or any of them, would not file any complaint or institute or cause to be instituted any proceeding under or related to the Fair Labor Standards Act of 1938 and would release the defendants * * * (those named above) from any claims for unpaid overtime compensation due to the aforesaid employees under the provisions of the Fair Labor Standards Act of 1938 and would sign general waivers and releases of their claims and would discontinue any proceedings for the recovery of unpaid overtime compensation instituted under the provisions of Section 16(b) of the Fair Labor. Standards Act of 1938 * * *."

Then follow certain alleged Overt Acts, namely:

I. An agreement on the part of the corporations with the unions, dated April 28, 1939, "which provided, among other things, that the employees should receive certain stated minimum wages per week and that the stated weekly wages were to be in payment for workweeks of six days, consisting of eight hours a day including a half hour for lunch, or a total of forty-five hours of work a week".

II. On May 2, 1939, a memorandum of agreement between the said parties, amending and modifying that averred in Overt Act I, which "provided that the union would agree to a reduction in the hourly wage for all employees of twelve and one-half (12½) per cent of their regular rates of pay, and further provided that the employees should be paid on this reduced hourly rate of pay in such wise that they would continue to receive the same wages originally provided for in the agreement entered into on April 28, 1939 on the regular rate provided in that first agreement and on a straight time basis for all hours worked up to fifty-six (56) hours per week although purporting to be in payment of time and one-half the reduced rate specified in the memorandum of agreement executed on May 2, 1939".

Obviously the foregoing is obscure in so far as it attempts to describe the effect of the second agreement.

III. On July 7, 1941, the defendant Harry Meth and others called a meeting for the employees of the corporations at the offices of the union. ·

IV. The defendant Meth, being present at the meeting, "demanded that the assembled employees execute releases of their claims for unpaid overtime compensation against" the corporations.

V. On August 1, 1941, the defendant Meth had a conversation with "one Robert Lazarowitz, an employee of Berke Cake Co., Inc., and E. L. K. Baking Co., Inc., at 57 Knickerbocker Avenue, Brooklyn, New York, in the course of which the said defendant, Harry Meth, asked the said Robert Lazarowitz to sign a release for claims for unpaid overtime compensation under the Fair Labor Standards Act of 1938 and to discontinue the action he had instituted against his employers for the recovery" thereof.

VI. This is to the same effect as V, except that the date is August 11, 1941.

VII. On August 15, 1941, the corporate defendants and Irving Berke "discharged Robert Lazarowitz from his employment".

VIII. On June 1, 1941, the defendant Irving Berke had a conversation with Joseph Lauria, an employee of these corporations, at which the latter was asked to sign a release for claims for unpaid overtime

compensation under the said Act and to discontinue a suit to recover the same.

IX. On November 15, 1941, the defendant Joseph Bless refused to accept the payment of union dues tendered to him by said Joseph Lauria.

X. On December 19, 1941, Joseph Lauria was discharged by the corporations and Irving Berke.

XI. On December 19, 1941, the corporations and Berke discharged James Russo.

XII. On the same date the same parties discharged Salvatore Pergola.

In order that the defendants may be held to answer a charge of conspiracy to violate the Fair Labor Standards Act, it must be alleged that the employees against whom the alleged conspiracy was directed were within the coverage of the Act, and that requirement is not met by this indictment, which merely refers to "numerous persons who were employees within the meaning of the Fair Labor Standards Act of 1938". The statutory definition is: "'Employee' includes any individual employed by an employer." 29 U.S.C.A. § 203 (e).

That the subject is important appears from Walling v. Jacksonville Paper Co., 317 U.S. 564, at 571, 572, 63 S.Ct. 332, 87 L.Ed. ——.

I find it difficult to determine whether the conspiracy as alleged was to operate in the future, or whether it was entered into at a time when violations of the law are said to have occurred which it was the object of the alleged conspiracy to circumvent. It ought to be possible to be clear about such matters in framing a pleading.

I suspect that the real difficulty which confronts the Government in this case is that, for some reason, it prefers not to charge these defendants with having violated the statute in discharging Robert Lazarowitz, Joseph Lauria, James Russo, and Salvatore Pergola; or in entering into the agreements set forth in Overt Acts I and II—although as to them there is no statement that less than the minimum rate of pay according to the statute was provided for—and has therefore adopted the artificial method of charging a conspiracy, in the hope of invoking a felony penalty, upon conviction, while Congress has provided in the statute a misdemeanor penalty as alternative to a fine, and then only for a second offense.

Demurrer sustained. Settle order.