18 So.2d 374

**HINKLE v. FRANK NELSON BLDG., Inc.**

**6 Div. 181.**

Supreme Court of Alabama.

June 8, 1944.

Rehearing Denied June 22, 1944.

D. H. Markstein, Jr., of Birmingham, for appellant.

Leader, Hill & Tennenbaum and Kenneth Perrine, all of Birmingham, for appellee.

LIVINGSTON, Justice.

The appellant, A. D. Hinkle, brought suit in the Circuit Court of Jefferson County, Alabama, against the Frank Nelson Building, Inc., a corporation, for unpaid minimum wages, overtime compensation, liquidated damages, plus attorneys' fees and court costs, under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

The cause was tried by the court without a jury and resulted in a judgment for the defendant, and from which this appeal is prosecuted. There is little, if any, conflict in the evidence, and the question here presented is the application of the law to the facts.

To bring himself within the coverage of the Act, appellant relies upon the following facts:

The appellee owns a ten story office building in the city of Birmingham, Alabama. Nine floors are rented to numerous tenants for offices, and a top floor, containing sixteen hundred square feet, is also used as rental space. The elevators do not serve the ground floor, but do serve the ten floors above it. The appellant is an elevator operator.

During the time covered by the complaint there were five elevators operating in the building. Elevator number one carried passengers and the heavy freight, packages and articles moving into and out of the building. Elevator number two carried passengers, but was also used for carrying freight when elevator number one could not be used for that purpose. Elevators three, four and five were passenger elevators, carrying the tenants of the building, their employees and members of the general public. Appellant regularly operated elevators two and three, but did, for a period of four months, operate elevator number one for forty minutes per day: also for a period of four months, he was relief man, operating each of the elevators when the regular operator was off for lunch.

The Crutcher Dental Supply Company was a tenant in appellee's building and occupied approximately three per cent. of the available rental space therein. It produced no goods in the building, but handled goods and merchandise produced outside Alabama. Approximately ninety-six per cent. of the goods handled were shipped, from points without the State, to its office in appellee's building. It shipped from its office, to customers outside Alabama, less than eighteen per cent. of the goods handled, and the balance was shipped to customers in Alabama.

The Birmingham Ordnance District of the United States Army, a tenant, occupied approximately two and three-fourths floors, or twenty-five per cent. of the available rental space in the building. It produced no goods in the building. It was engaged in procuring materials for the United States Army, and with the exception of a few sample shells, grenades, pamphlets, manuels, etc. no material procured by it ever went into or out of the office. It kept its books and records, did its clerical work, etc., in its office in appellee's building.

The Red Diamond Coal Company, another of appellee's tenants, occupied approximately three-fourths of one per cent. of the available rental space in the building. It owned and operated a coal mine in Alabama, and approximately ten per cent. of its output was shipped from its mine in interstate commerce. Occasionally small parts of machinery for the mine came to its office from without the State, and were

carried to the mine by its president in his hands or pockets. It produced no goods in the building, but kept its books and records, and did its clerical work in its office in appellee's building.

The American Optical Company rented and occupied approximately two and one-fourth per cent. of the available rental space in the building. Practically all of the merchandise handled by it was shipped to its office in appellee's building from points without the State. Some of the merchandise was worked on or processed after it reached the firm's office in the building. That is to say, the firm ground lenses for eye glasses and cut some according to doctor's prescriptions. The amount of the goods so processed is not entirely clear, but of the amount processed, about two per cent. found its way into interstate commerce, and the balance was sold in Alabama. In addition, it shipped, in interstate commerce, about five per cent. of all unprocessed goods handled.

The F. T. Skelton Wholesale Jewelry and Supply Company occupied approximately one and one-fourth per cent. of the available rental space in the building. Its principal business is that of distributor or jobber. More than fifty per cent. of the goods handled by the firm was shipped to its office in the building from points without the State. But less than five per cent. of the goods handled were reshipped out of Alabama. It ground some lenses or glasses in its office.

The Railway Express Agency, Inc., delivered daily, in its regular course of business in appellee's building, packages, goods and merchandise, shipped from points without the State; and picked up packages, at offices in the building, for interstate shipment.

Appellant's only connection with the foregoing was that of elevator operator in appellee's building. He operated the elevators on which appellee's tenants, their employees, and others having business in the building, traveled, and the freight elevator as above indicated. He neither carried nor handled any of the goods and merchandise entering or leaving said building.

Appellant cites Arsenal Building Corporation v. Walling, and the companion case of Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638; Burton v. Zimmerman, 4 Cir., 131 F.2d 377, and Walling v. Sondock, 5 Cir., 132 F.2d 77.

The pertinent provisions of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C. § 201 et seq., 29 U.S.C.A. § 201 et seq., provide under section 6 that "every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce" prescribed minimum wages; and under section 7, overtime compensation must be given "any of his employees who is engaged in commerce or in the production of goods for commerce," where said employee works longer than the maximum hours prescribed by the Act.

Section 3(b) of the Act defines commerce as follows: " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

Section 3(j) provides as follows: "For the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, hauling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

The Act includes two classes of employees, those engaged in commerce, and those engaged in the production of goods for commerce. The Act, by its terms, restricts the first class of employees to those actually engaged in commerce, but it does not limit the second class to those who participate in the physical process of the making of the goods but extends its coverage to employees engaged "in any process or occupation necessary to the production."

A reading of the Arsenal Building and Kirschbaum cases, supra, discloses that the court bases its decision on the finding that the employees, in the loft building involved, were included in the second class of employees referred to in the Act, viz., employees "engaged in the production of goods for commerce," and that the tenants in the building were principally engaged in the production of goods for commerce.

In the case of Burton v. Zimmerman, supra [131 F.2d 378], the Circuit Court of Appeals (Fourth Circuit) held that a complaint which alleged that plaintiffs were employed as porters and laborers in a fifteen story office building, whose tenants were "engaged in interstate commerce," should not have been dismissed, unless (the court said) "we are prepared to hold that,

682

no matter what might be shown under the allegation that the tenants of the building were engaged in interstate commerce, plaintiffs, as porters and laborers within the building, would not be engaged in interstate commerce within the meaning of the act when rendering services necessary to the activities of the tenants."

In the case of Walling v. Sondock, supra [132 F.2d 78], the suit was against an agency engaged in the business of furnishing guards and watchmen to various customers in and about Houston, Texas. The question was whether the agency was subject to sections 6 and 7 of the Fair Labor Standards Act of 1938, with respect to those of their employees that were furnished to customers engaged in the production of goods for commerce or the distribution of goods in commerce. The court said:

"Whether or not the Act, 29 U.S.C.A. § 151 et seq., is applicable in a given instance depends upon the character of the duties performed by the employee; and, if the work of the employee has such close and immediate connection with the process of production for commerce as to be an essential part of it, such employee is engaged in the production of goods for commerce within the meaning of the Act. Similarly, if an employee's services are part of and contribute materially to the consummation of transactions in interstate commerce, the employee is engaged in commerce as defined by the Act. Upon these principles, those watchmen charged with the protection and preservation of the buildings and machinery used to produce goods for commerce perform duties having an essential relationship to the process of producing and distributing goods in interstate commerce."

The rulings on these cases are not decisive of the issue before us.

Was the appellant "engaged in commerce," or "engaged * * * in the production of goods for commerce," within the meaning of the Fair Labor Standards Act? In reaching a proper determination of the question we are obviously governed by the decisions of the Supreme Court of the United States.

In enacting the Fair Labor Standards Act, Congress indicated its purpose to leave local business to the protection of the states. It did not exercise in that Act the full scope of the commerce power. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Ar-

senal Building Corporation and Kirschbaum v. Walling, supra.

In the recent case of McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1249, 87 L.Ed. 1538, the Supreme Court held that a cook preparing meals for maintenance men of a railroad was not covered by the Fair Labor Standards Act. The court there said:

"In drafting legislation under the power granted by the Constitution to regulate interstate commerce and to make all laws necessary and proper to carry those regulations into effect, Congress is faced continually with the difficulty of defining accurately the precise scope of the proposed bill. In the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority. The proposal to have the bill apply to employees 'engaged in commerce in any industry affecting commerce' was rejected in favor of the language, now in the act, 'each of his employees who is engaged in commerce or in the production of goods for commerce.' "

In the case of Walling v. Jacksonville Paper Co., supra [317 U.S. 564, 63 S.Ct. 337, 87 L.Ed. 460], where the question considered by the court was whether certain employees of the respondent were "engaged in commerce," the court said: "The applicability of the Act is dependent on the character of the employees' work. Kirschbaum v. Walling, supra, 316 U.S. page 524, 62 S.Ct. [1116], 86 L.Ed. [1648]. *If a substantial part of an employee's activities relate to goods whose movement in the channels of interstate commerce was established by the test we have described, he is covered by the Act.* Here as in other situations (A. B. Kirschbaum Co. v. Walling, supra, 316 U.S. page [528], 62 S.Ct. [1116] 86 L.Ed. [1647], the question of the Act's coverage *depends on the special facts pertaining to the particular business."* (Italics supplied.)

And in Johnson v. Dallas Downtown Development Co., 5 Cir., 132 F.2d 287, 290, certiorari denied 318 U.S. 790, 63 S.Ct. 994, 87 L.Ed. 1156, it was said: "Clearly, Congress intended the coverage * * * to stop somewhere, and the line bounding coverage must be drawn somewhere."

And in the Arsenal Building Corporation and Kirschbaum cases, supra [316 U.S. 517, 62 S.Ct. 1121, 86 L.Ed. 1638] it is said by the United States Supreme Court:

" 'There is thus no point in the instant case in a demand for the drawing of a mathematical line. And what is reasonably clear in a particular application is not to be overborne by the simple and familiar dialectic of suggesting doubtful and extreme cases.' Santa Cruz Fruit Packing Co. v. National Labor Relations Bd., 303 U.S. 453, 457, 58 S.Ct. 656, 660, 82 L.Ed. 954, [960], 'What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation.' Gully v. First Nat. Bank, 299 U.S. 109, 117, 57 S.Ct. 96, 100, 81 L.Ed. 70, [74]."

The rule seems to be, therefore, that if a substantial part of an employee's activities is related to "commerce" or the "production of goods for commerce," he is covered by the Act.

Without further analysis of the facts, but applying a rule of reason and common sense to them, we are persuaded that appellant's activities "in commerce" or related to the "production of goods for commerce," in this case, is not substantial, but is minor and insignificant. In re New York Title & Mortgage Co., 179 Misc. 789, 39 N.Y.S. 893; Johnson v. Masonic Building Co., 5 Cir., 138 F.2d 817.

We are in accord with the holding of the trial court, and the cause is due to be, and is, affirmed.

Affirmed.

GARDNER, C. J., and THOMAS, BROWN, FOSTER, and STAKELY, JJ., concur.