Doherty, Rumble, Butler, Sullivan & Mitchell, of St. Paul, Minn., for defendants.

## MAITREJEAN v. METCALFE CONST. CO. et al.

### Civ. No. 811.

District Court, Minnesota, Third Division.

Aug. 21, 1946.

NORDBYE, District Judge.

The defendants were engaged in a joint enterprise under a contract with the United States Government in the construction of various warehouses, barracks, messhalls, garages, relay stations, air strips and air runways in Alaska and Canada. Plaintiff was hired as a timekeeper at $275 per month on a 48 hour a week basis, and worked in that capacity and in the Commissary Department from July, 1943, until April, 1944. His entire employment was in Alaska. The defendants were only engaged in the construction work as above stated and had nothing to do with the so-called Alcan Highway or any highway or project which was an instrument of interstate commerce. Apparently, however, the various projects were constructed for the anticipated use of the Alcan Highway and for war purposes.

The materials and supplies which went into the construction of the buildings erected and the construction work performed by the defendants came from the United States, Canada and Alaska. Those coming from the United States and Canada were shipped to Alaska by rail, water and truck to the defendants' warehouse at Fairbanks, Alaska, and then routed to the several jobs for incorporation or use in the several projects which were to be built and constructed. There were some seven major

110

projects built by the defendants between July, 1943, and April, 1944.

After plaintiff arrived at Fairbanks early in July, 1943, he was assigned to the Commissary Department at a project referred to as the Zhender Camp. Although he was classified as a timekeeper, his duties at this time consisted of selling merchandise, such as candy, tobacco, cigarettes, and miscellaneous items in the Commissary, and checking meal tickets, receiving mail for the employees, and distributing the same at the canteen. After about three weeks at the Zhender Camp, he was transferred to the canteen commonly known as Tanacross, where he performed similar duties. He remained at Tanacross until early in November, 1943, when he was assigned to Zhender Camp as a timekeeper, and remained at that camp in that capacity from November 4, 1943, until April 23, 1944, when he terminated his employment. At Zhender Camp, barracks, commissaries, warehouses, and garages were erected. The number of employees ranged from 250 to 300. Engaged there were truck drivers, estimated to be about 20 with that designation, carpenters, mechanics, cooks, storekeepers, warehousemen, electricians, and many other types of employees.

Plaintiff does not contend that the defendants were engaged in the production of goods for commerce, or that the work of the defendants in which plaintiff participated was in connection with any highway which was being used as an instrument in interstate commerce. He contends that the bulk of the materials and supplies used in the construction work originated in the States for specified jobs constructed by the defendants in Alaska and that such material and supplies were moving in interstate commerce until they reached the job site. He reasons, therefore, that the employees who participated in such moving were engaged in interstate commerce under the Act (Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Crabb v. Welden Bros., D.C., 65 F.Supp. 369; Clyde v. Broderick, 10 Cir., 144 F.2d 348), and that as a timekeeper for such employees, as well as others, he was engaged in interstate commerce in that the work he was performing was so closely related to the movement of commerce as to be a part of it. The legal principles relied on by the plaintiff may be sound, but it is to be doubted that he has sustained the burden of proof which rests upon him to establish a factual situation which permits the application of the principles enunciated.

█ It seems clear that plaintiff's employment in the canteen at Tanacross and at Zhender Camp from July, 1943, to November, 1943, does not bring him within the Act. His duties there had no relation to the movements of goods in interstate commerce. They were not so intimately connected with the interstate movement of supplies and materials so as to be, in legal contemplation, a part thereof. He was primarily a clerk in the canteen, which sold various items to the employees, many of whom were employed on projects which were under construction. Undoubtedly at times he helped unload supplies as they came into the canteen, but the proportion of his time consumed in the unloading of such supplies, or the amount of such supplies, assuming that they were in interstate commerce at the time, does not appear. The time spent in receiving and handling mail is also a matter of conjecture; apparently it was only incidental and voluntary.

█ It may well be that, if a substantial portion of a timekeeper's services is devoted to keeping time for employees who are engaged in the unloading, transporting and handling of goods moving continuously in interstate commerce, such timekeeper's duties are so closely associated with the movement of goods and merchandise in commerce that it would justify a finding that such employee is engaged in commerce within the meaning of the Act. But, in the instant situation, there is no satisfactory showing as to plaintiff's connection with the transportation or handling of materials moving in interstate commerce except the inference that, included within the group of men whose time he kept, there were truck drivers and others who may have at times hauled and handled material moving in such commerce to one or more of the jobs immediately adjacent to Fairbanks which were being constructed by the de-

fendants. The movement of material and supplies from the Fairbanks warehouse to the distant points was handled by army trucks and army personnel. The evidence is too general and too indefinite to enable the Court to make any finding that a substantial part of plaintiff's time as a timekeeper was related to goods moving in interstate commerce. Certainly, as far as the evidence indicates, the keeping of time for mechanics in the machine shop, the men handling heavy duty tractors, the electrical men, the cooks, commissary employees, and the laborers employed in construction work had no relation to interstate commerce. It is fair to find that the interstate journey of the materials and supplies had ended when their work with reference thereto was being carried on. It must be remembered that defendants were engaged as contractors to construct buildings, air bases and air strips. The movement of material and supplies was only incidental to their contract with the Government. In fact, the movement of materials and supplies from the States to Alaska and from the seaports to Fairbanks was almost entirely arranged and handled by government employees. It does not appear that the truck drivers included in the list of employees whose time plaintiff may have kept were continuously engaged in commerce. Undoubtedly at times they were required to move materials and supplies in and about the Fairbanks area when no interstate commerce was involved. Moreover, there would be lapses in the periods when goods were moved from the rail heads to the warehouse, and·from the warehouse at Fairbanks to the various jobs. The extent to which warehousemen may have been engaged in commerce, or their number, does not appear. Indeed, it would be a wild guess to try to make a finding as to any period or periods when it may be said from the evidence that a substantial part of plaintiff's activities related to the keeping of time of men who were engaged in handling or hauling merchandise which at the time was in interstate commerce. It may be noted that the mere fact that a man was listed on the payroll as a truck driver does not necessarily mean that he was employed in that capacity. It appears from the evidence that, as long as the men were employed in the same wage bracket, truck drivers might be, and were, shifted to other duties as the necessities of the work seemed to require. The difficulty with plaintiff's case, as I see it, is that the burden of proof rests upon him to establish that he comes within the terms of the Act, and he has failed to show by a fair preponderance of the evidence that, during any particular week or weeks, a substantial part of his work related to the keeping of time for men who were engaged in moving or handling goods in interstate commerce. In fact, there is an absence of any satisfactory evidence as to the length of time the merchandise and supplies remained in the warehouse at Fairbanks, whether it was a temporary pause in transit or a complete cessation of its interstate journey. The evidence is indefinite as to any continuity of movements of any of the merchandise which may have been hauled or handled by the defendant truck drivers or other employees included in the list of employees whose time plaintiff may have kept. To assure myself that my recollection of the testimony was accurate, I had prepared a complete transcript of the testimony given at the trial. This I have examined with care, and from such examination I am convinced that plaintiff has failed to make out a case.

Summarizing, therefore, we do know that a substantial amount of materials and merchandise for defendants' construction came from the States and was stored in the warehouse at Fairbanks, and we do know that, from time to time, at least, merchandise and supplies from the warehouse were moved to the several jobs which defendants were constructing, including those at the Fairbanks area. But the extent to which plaintiff in performing his duties as a timekeeper was connected with any interstate movement is too indefinite and too general to justify a finding that a substantial part of his activities related to goods whose movements were in channels of commerce. Walling v. Jacksonville Paper Co., supra, 317 U.S. at page 572, 63 S.Ct. 332, 87 L.Ed. 460. Finally, it may be stated that the general character of the evidence is fully consonant with the view that plaintiff's duties were principally concerned with

keeping time for various types of workmen engaged in construction work which was wholly intrastate in character, and that the evidence lacks the necessary particularity referred to in Walling v. Jacksonville Paper Company, supra, to justify a finding that he was engaged in commerce during the period referred to.

Findings of fact and conclusions of law in harmony herewith may be presented by the defendants.

An exception is reserved to the plaintiff.