## McCOMB v. HUNSAKER TRUCKING CONTRACTOR, Inc.

### No. 12490.

United States Court of Appeals
Fifth Circuit.

Dec. 14, 1948.

Rehearing Denied Jan. 18, 1949.

Bessie Margolin, Asst. Solicitor, U. S. Dept. of Labor, of Washington, D. C., and Earl Street, Reg. Atty., U. S. Dept. Labor, of Dallas, Tex., for appellant.

Chas. Romick and Leroy Hallman, both of Dallas, Tex., for appellee.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The appellant, desiring to inspect the records and investigate the practices of appellee and determine whether there have been any violations of the Fair Labor Standards Act, as authorized by Section 11 (a) thereof, 29 U.S.C.A. § 211(a), and having been unsuccessful in agreeing with appellee as to what books and other records were subject to inspection, issued a subpoena duces tecum to produce at a stated time and place "(1) The records showing the hours worked by and the wages paid to each of the Company's employees between June 15, 1946, and May 27, 1948. (2) The records showing the names of the Company's customers and the type of work done for each of them between June 15, 1946, and May 27, 1948. (3) The records showing the source and receipt of goods from outside the State of Texas between June 15, 1946, and May 27, 1948. (4) The records showing the source and destination of goods hauled or transported from points within the State of Texas to points outside thereof between June 15, 1946, and May 27, 1948." The subpoena was not obeyed and the District Court was petitioned to issue its order directing the records to be produced at such time and place as the court might order. The appellee answered under oath admitting that during the time under enquiry it has been a corporation under the laws of Texas engaged in interstate commerce and in the production of goods for commerce, especially in transporting by motor vehicle as a common carrier oil field equipment between points within and points without the State for use in the production of oil and gas for interstate commerce; and that the subpoena was issued and not obeyed. It denied that all the records sought were material or appropriate to determine whether there had been violations of the Act, and averred at length that most of its employees were under the jurisdiction of the Interstate Commerce Commission and exempt from the provisions of the Act, but it admitted that 75 percent of its business was done in interstate commerce, and all of its employees are and have been engaged indiscriminately in interstate and intrastate work. It was stated that appellee was willing to produce any records that were reasonably necessary, but that to produce all called for was a physical impossibility, would take from their work most of the employees to assemble the papers, and a large truck to carry them, whereas the essential facts could be reasonably ascertained from the pay roll records and time sheets of its employees and the logs of its drivers, which it offered to produce. There was a running argument before the judge but no evidence save the affidavits supporting the petition, and the sworn answer. The appellee moved to dismiss. The judge concluded: "I think it is safer, gentlemen, to grant this motion to dismiss and let the parties work out such inspection, if they

see fit, as may appear reasonable to both sides and satisfactory to both sides", and he dismissed the application.

We think this was error. Under 29 U.S.C.A. § 209 which makes applicable 15 U.S.C.A. § 49 and 50, the parties having disagreed, it became the duty of the court to fix what it was reasonable to require. The Administrator had authority to make the proposed enquiry. Under the decision in Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460, all the employees were under the Act because all were admitted to be substantially employed in interstate commerce as well as intrastate commerce. Even those under the jurisdiction of the Interstate Commerce Commission were by the provisions of 29 U.S.C.A. § 213(b) exempt only from the maximum hours requirements of Section 207. The Administrator could rightly see for himself who the employees were, what each did, what each was paid, and which were under partial exemption. To do this, however, would not probably require the collection and production of all records of customers' transactions, and bills of lading and other records of each interstate purchase and transportation of goods. In our judgment it would be reasonable to require presently the full records of all employees, their hours, wages and general nature of work at a reasonable time and place. If after examining these, the Administrator should find need for additional information, let him apply under this petition for a further order to produce additional necessary records, if not voluntarily produced. It is more reasonable thus to split the Administrator's enquiry than to presently require the assembly and production of a vast mass of documents for which there is no apparent need.

The judgment of dismissal is reversed, and the cause remanded with direction to frame an order in conformity with this opinion.

Reversed with direction.

HUTCHESON, Circuit Judge (concurring specially).

I concur in the result and with all that is said in the opinion. In view, however, of the over-emphasis in the argument upon stark power, the under-emphasis upon the citizen's constitutional rights, when the cause was submitted to us, I desire to add a few words.

Notwithstanding the changing climate of opinion in some governmental circles and the strange and repugnant trend there toward statism and rule by fiat, the Constitution is still the basic law. No matter, then, what statutes may be enacted, what regulations imposed, what actions taken by governmental agencies, the courts must be ever on the alert to preserve and protect constitutional rights.

I will agree that the rights and duties of citizen and government are mutual and that it is on a two way street that one arrives at them. I will agree, too, that sometimes a citizen is obstructive beyond his rights, uncooperative where he ought to be cooperative, I cannot, though, agree that such conduct on the part of the citizen ought to, or does confer unconstitutional powers upon an agency of the government. It is only where the citizen and the government come in conflict that the real value of constitutional rights appears. It is only because in the American way of life a free man is one who knows his rights and, knowing, dares maintain them that the American Constitution has been, and will continue to be, more than a scrap of paper, that constitutional government has been, and will continue to be, a reality here.

Whenever then a citizen and a government agency are in conflict in the courts, three paramount considerations must be ever kept in mind. These are: (1) "Arbitrary power and the rule of the Constitution cannot both exist"; (2) The burden is on the agency to establish, not upon the citizen to overthrow, the agency's claim of power; and (3) A court must not permit its writs and decrees to be written large for it, it must frame them for itself precisely and with the utmost care. If its writs and decrees are framed under Constitutional principles to grant the necessary relief, avoiding not only harsh and oppressive, but unnecessary and unreasonable, restraints and compulsions, neither agency nor citizen may complain. For more than this cannot be required of a citizen. Less than this will not suffice.