# Richmond

## John T. Robinson v. Barrow-Penn and Company, Incorporated.

January 26, 1953.

Record No. 4009.

Present, Hudgins, C. J., Buchanan, Miller, Smith, Whittle, JJ.

The opinion states the case.

*Thomas J. Surface,* for plaintiff in error.

*Woods, Rogers, Muse & Walker, Sidney F. Perham, Jr.,* for defendant in error.

*William S. Tyson, John J. Babe, James M. Miller, James B. Leist,* Attys. U. S. Dept. of Labor, amici curiae.

MILLER, J., delivered the opinion of the court.

John T. Robinson, an employee of Barrow-Penn and Company, Incorporated, instituted action against his employer under the Fair Labor Standards Act[1] for overtime pay and damages that he claimed were owing to him.

Plaintiff asserted that during a period of 48 weeks while he was employed by defendant in 1950 and 1951, he worked 32 hours overtime each week, and had thus accumulated 1536 overtime hours. He sought to recover $1,958.40, which represented "pay at time and a half rate" for the overtime claimed, and an equal sum as liquidated damages and reasonable attorney's fees, all as allowed by statute.

In the motion for judgment the following allegation appears: "That the defendant corporation is engaged in the wholesale grocery business, which business consists of buying in wholesale quantities merchandise from manufacturers, and selling the same to retail stores in Virginia and West Virginia. This merchandise was shipped in, by rail and truck to the said defendant and it was consigned to and on delivery the property of the defendant Corporation, that the ultimate retail stores who might buy this merchandise, at the time it was unloaded were not determinable, but on the other hand, such merchandise was thereafter sold to retail stores and institutions who ordered the same from time to time, after it was unloaded and in the warehouse of the defendant Corporation."

With regard to the character of services that he had been rendering, plaintiff set out that his "duties consisted of driving a truck, delivering groceries in wholesale quantities to stores situated in the State of Virginia; unloading Railway cars and

---

[1] Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, as amended by c. 736, 63 Stat. 910, 29 U.S.C.A. 201 (1952 Cum. Supp.)

trucks consisting of shipments from out of State, and working in the defendant Corporation's warehouse." And that his "work consisted of unloading shipments originating out of state from railway freight cars and motor trucks said shipments [sic] and delivering same to defendant's warehouse, and later delivering some of said merchandise to various independently owned retail stores.".

The specific statutory provisions relied upon by Robinson are section 7(a) and section 16(b) of the Fair Labor Standards Act, which appear in part below. Part of section 13(b) is also quoted because of its pertinency to the question presented.

"Sec. 7(a).—Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." (29 U.S.C.A. 207(a))

"Sec. 16(b).—Any employer who violates the provisions of § 6 or § 7 of this Act shall be liable to the employee or employees affected in the amount of * * * their unpaid overtime compensation * * * and in an additional equal amount as liquidated damages * * * [and] reasonable attorney's fee." (29 U.S.C.A. 216(b))

"Sec. 13(b).—The provisions of section 7 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935; * * *" (29 U.S.C.A. 213(b)(1))

In defendant's grounds of defense it asserted that Robinson was "an employee with respect to whom the interstate Commerce Commission had power to establish qualifications and maximum hours of service pursuant to the provisions of § 204 of the Motor Carrier Act, 1935[2] (49 U.S.C.A. § 304) and as such" he was "exempted from the provisions of § 7 of the Fair Labor Standards Act (29 U.S.C.A., 207) by virtue of § 13b(1) of said act. [29 U.S.C.A. § 213b(1)]."

In short, defendant corporation insists that plaintiff was not

[2] The Motor Carrier Act of 1935, as amended, is known as Part II of the Interstate Commerce Act, c. 498, 49 Stat. 543, 49 U.S.C.A. 301.

entitled to recover under section 7(a) of the Fair Labor Standards Act because under the express terms of section 13(b)(1), he was an employee for whom the Interstate Commerce Commission had power to fix maximum hours of service under the Motor Carrier Act of 1935, and he was thus excluded from the benefits for overtime work under section 7(a). The relevant parts of the Motor Carrier Act of 1935 relied upon by defendant are:

"Sec. 203(b).—Nothing in this chapter, except the provisions of section 204 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment, shall be construed to include * * * (8) The transportation of * * * property in interstate * * * commerce wholly within a municipality * * *; (49 U.S.C.A. 303(b))

"Sec. 204(a).—It shall be the duty of the Commission * * * (3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. * * *" (49 U.S.C.A. 304(a)(3))

█ To bring the employee operators of trucks of a motor carrier engaged in interstate commerce within the exclusion provisions of section 13(b)(1) of the Fair Labor Standards Act with respect to overtime hours of service, it is not required that the Interstate Commerce Commission should have exercised its power to establish qualifications and maximum hours of service for such truck operators, or that there be need for it to exercise that power. It is sufficient if the power exists in the Commission to do so.

"It is not necessary, as a condition precedent, to find that the Commission has exercised, or should exercise, such power by actually establishing qualifications and maximum hours of service with respect to loaders in general, corresponding to those established for drivers in general. The existence of the power is enough." *Levinson* v. *Spector Motor Service,* 330 U. S. 649, 678, 67 S. Ct. 931, 91 L. Ed. 1158, and *Beggs* v. *Kroger Co.,* 167 F. (2d) 700 (C.C.A.8).

However, after a full hearing the Interstate Commerce Commission did declare on May 1, 1940, that there was need for it to fix reasonable requirements as to the qualifications and maximum hours of service of *drivers* of private interstate motor car-

riers of property to promote safety of operation, and its factual findings and requirements in this respect were made effective by order duly entered. Ex parte No. M.C. 3, 23 M.C.C. 1.

This declaration and action by the Interstate Commerce Commission is recited and given judicial recognition in *Walling* v. *Mutual Wholesale Food & Supply Co.*, 46 F. Supp. 939, at 951, and in *Levinson* v. *Spector Motor Service, supra.* See also Interpretative Bulletin No. 9, Wage and Hour Division, 4th Revision, March, 1942, par. 5, p. 4.

On October 5, 1951, a pre-trial conference was held at which certain factual concessions were made by counsel for plaintiff, but these admissions were not then set out in writing. It would have been better and more in keeping with the rules of court having to do with pre-trial conferences had the court at that time required counsel to state clearly and reduce to writing the stipulations of fact then made. Rule of Court, 4:1. However, in the final order entered on October 22, 1951, the following factual concession which had been made by plaintiff's counsel at the conference was recited and entered of record.

"At this conference counsel for plaintiff conceded that plaintiff's regular duties were those of a truck driver for the defendant and that in the course of such duties he was regularly called upon to transport in defendant's trucks merchandise, shipped from out of state points and consigned to the defendant from the railroad terminal, to the defendant's warehouse."

In a brief opinion announced on October 18, 1951, and made a part of the record by order of October 22, 1951, the court also said:

"In a Pre-trial Conference held on October 5, 1951, in the above styled case it was conceded by both parties that a part of the duties of the plaintiff under the employment of the defendant was that of a driver of one of the defendant's trucks, one of whose duties in the course of his employment was to transport on said truck goods or property of the defendant consisting of out of State shipments from railroad cars to the warehouse of the defendant, said shipments being consigned to the defendant. These goods were subsequently sold, distributed and delivered to various customers of the defendant both within and without the State."

There is no denial of or objection made to the court's factual

recital and adjudication that these concessions were made at the pre-trial conference.

On the strength of plaintiff's allegations in his motion for judgment and his concessions, defendant asked for and obtained summary judgment in its favor, and to that judgment plaintiff was awarded an appeal.

■ It may be fairly said that the following facts were conclusively established against plaintiff by his pleadings and his concessions at conference.

Defendant corporation is engaged in the wholesale grocery business in the city of Roanoke, Virginia. Groceries and goods in wholesale quantities are purchased by it from manufacturers and distributors, some of whom are located within and some without the state of Virginia, and defendant, in turn, sells this merchandise at wholesale to retail dealers located in Virginia and West Virginia. Goods bought by defendant from out-of-state dealers and suppliers are shipped to it by rail and by trucks. Part of the goods shipped to defendant by rail from out-of-state points is unloaded from the cars at a railway freight terminal in the city of Roanoke and then loaded onto defendant's trucks and thus transported from the railway terminal to defendant's warehouse in the city of Roanoke. This merchandise is thereafter sold and shipped by defendant to various retail stores and institutions within and without Virginia who purchase it from time to time after it is stored in the warehouse.

Robinson's regular duties consisted of unloading goods shipped to defendant from out-of-state by truck and railroad cars, and driving trucks for defendant. In performing these duties he was regularly called upon to operate a truck and transport merchandise shipped to defendant from out-of-state points from the railroad terminal in Roanoke to defendant's warehouse located in that city.

Plaintiff asserts that he was engaged in interstate commerce while unloading freight cars of incoming interstate shipments to defendant and thus within the general purview of the Fair Labor Standards Act. This is not disputed. But whether or not he was also engaged in interstate commerce when transporting the goods that had been shipped defendant from out of state, from the railway freight terminal to defendant's warehouse is determinative of his right to recover. With respect to this vital

question, plaintiff's position was thus stated in his 6th and 8th exceptions taken to the order of October 22, 1951:

"6. The plaintiff was in interstate commerce only when unloading railway cars. It was the unloading which brought him under the labor act. The unloading was interstate; the driving of the truck was intrastate and the transportation was purely intrastate as the plaintiff crossed no state line.

\*    \*    \*    \*    \*    \*

"8. That the merchandise which the plaintiff unloaded from freight cars had reached the end of interstate journey and was not subject to provisions of the Motor Carrier Act when transported in the State of Virginia."

In his petition for appeal he likewise stated:

"In the instant case none of Robinson's duties involved safety operations in Interstate Commerce. He did not drive the truck outside of Virginia. The merchandise that he unloaded was the property of the defendant the moment it was unloaded and lost its character of Interstate Commerce when delivered in Roanoke. Robinson's duties were not a part of a continuous haul nor other duties in Interstate Commerce. When he loaded his truck at the railway station he was not loading an interstate truck but an intrastate truck."

Plaintiff thus asserts and contends (1) that the interstate movement of the goods shipped to defendant from out of state terminated upon delivery at the railway terminal; (2) the hauling by him in defendant's trucks from the terminal to defendant's warehouse was intrastate transportation. In substance, he says that the unloading of the goods from the railway cars put him under the Fair Labor Standards Act, but the loading and transportation by him of the goods to the warehouse did not put him under the Motor Carrier Act of 1935.

Defendant earnestly insists that Robinson was engaged in interstate commerce not only when unloading the goods at the railway terminal but while subsequently loading them upon its trucks and driving the loaded trucks to and unloading the goods at the warehouse.

There was no question that defendant was a private carrier of property by motor vehicle. The trial court found that plaintiff's allegations and concessions conclusively disclosed that he devoted a substantial part of his time and services to the hauling by truck of goods from the railroad terminal to defendant's

warehouse, which goods had been consigned from out-of-state points. Upon these conceded and established facts, the court held that Robinson came under section 13(b)(1) of the Fair Labor Standards Act and was an employee "with respect to whom the Interstate Commerce Commission had power to establish qualifications and maximum hours of service" under the Motor Carrier Act of 1935, and was thus not entitled to recover under section 7(a) of the Fair Labor Standards Act. *Levinson* v. *Spector Motor Service, supra; Morris* v. *McComb,* 332 U. S. 422, 68 S. Ct. 131, 92 L. Ed. 44.

The allegations of the motion for judgment, supplemented and aided as they were by plaintiff's concession at conference, sustain the court's factual recital and finding set out in its order of October 22, 1951. Thus the ultimate and vital issue is: Did the out-of-state goods continue in interstate commerce from the railroad terminal until they reached the defendant's warehouse? If so, the judgment of the trial court must be affirmed.

The following decisions clearly show that they did remain in interstate commerce at least until they came to rest at the warehouse.

In *Walling* v. *Mutual Wholesale Food & Supply Co., supra,* the facts established with regard to the services of certain truck drivers, were almost identical to those shown by this record. There, as here, certain of the defendant company's drivers were engaged in hauling from a railroad terminal to defendant's warehouse in Minneapolis, Minn., goods that had been shipped from out of state to defendant at Minneapolis. It was contended that these drivers were not engaged in interstate commerce. The court said:

"In as much as it had been already determined that at least some of the shipments received in this manner were intended for delivery to Mutual at the time they were shipped in interstate commerce, it follows that the drivers engaged in hauling such merchandise to Mutual's warehouse were thus engaged in interstate commerce. * * *" 46 F. Supp. 939, 951.

Upon appeal to the Circuit Court, this part of the District Court's decision was not questioned or disturbed. *Walling* v. *Mutual Wholesale Food & Supply Co.,* 141 F. (2d) 331 (C.C.A. 8).

The facts proved in the case of *Walling* v. *Jacksonville Paper Company,* 317 U. S. 564, 63 S. Ct. 332, 87 L. Ed. 460, showed that

the intended destination of goods when shipped from out of state was the retail customers for whom they had been purchased by the consignee. The court held that a temporary pause at the consignee's warehouse did not change the interstate character of the transportation and that the goods remained in interstate commerce to and beyond the warehouse and until they reached the customers for whom they were intended when originally shipped. In this connection, it said, ''A temporary pause in their transit does not mean that they are no longer 'in commerce' within the meaning of the Act. As in the case of an agency (cf. *De Loach* v. *Crowley's, Inc.,* 128 F. (2d) 378) if the halt in the movement of the goods in a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points.'' (p. 568)

Of like import are the following decisions: *Allesandro* v. *C. F. Smith Co.,* 136 F. (2d) 75 (C.C.A. 6); *McComb* v. *Wyandotte Furniture Co.,* 169 F. (2d) 766 (C.C.A. 8).

Nor did the mere transfer of title from the consignor to the consignee upon delivery to the latter at the rail terminal change the interstate nature of the transportation. *De Loach* v. *Crowley's, Inc.,* 128 F. (2d) 378; *Swift and Company* v. *United States,* 196 U. S. 375, 398, 25 S. Ct. 276, 49 L. Ed. 518.

It is clear that when the goods were shipped the warehouse and not the railway terminal was their intended destination. *Walling* v. *Mutual Wholesale Food & Supply Co.,* 46 F. Supp. 939, 949. There was practical continuity of movement until they came to rest at the warehouse. The brief pause of the goods at the railroad terminal for transfer to defendant's trucks was part and parcel of their practical carriage. Thus their transportation by plaintiff from the rail head to the warehouse was part of their interstate movement. It necessarily follows that plaintiff when hauling these goods by truck to the warehouse was an employee engaged in interstate commerce, and as that work constituted a substantial part of his duties, recovery by him for overtime work is precluded by section 13(b)(1) of the Fair Labor Standards Act. The judgment of the trial court is affirmed.

*Affirmed.*