### OUENDAG et al. v. GIBSON.
### Civil Action No. 251.

District Court, W. D. Michigan, S. D.
March 12, 1943.

Thomas G. Roach, of Grand Rapids, Mich., for plaintiffs.

Earl W. Dunn and Hoffius & Van Kovering, all of Grand Rapids, Mich., for defendant.

RAYMOND, District Judge.

## Findings of Fact.

1. Plaintiffs, former employees of defendant, seek to recover for alleged unpaid minimum wages and overtime compensation, as appear by the amended bill of particulars filed herein, together with statutory penalties and costs.

2. During the period covered by plaintiffs' claims, defendant was engaged in a specialty business in Grand Rapids, Michigan, the business consisting principally of the sale of merchandise to customers within the state of Michigan, the sales being made at both wholesale and retail within comparatively short distances from Grand Rapids.

3. The wholesale portion of defendant's business arises largely from the sale of merchandise to various merchants who use the various items as premiums to be resold to customers upon the purchase by such customers of a specified quantity of other merchandise.

4. Another source of defendant's wholesale business is the supplying of merchandise by the defendant to various church or social organizations who dispose of the merchandise to the public in connection with the operation of beano games.

5. Defendant sells at retail to the general public from the stock of merchandise displayed in the store operated by defendant at Grand Rapids.

6. Other branches of defendant's business consist of the following:

(a) The leasing of vending machines for the sale of cigarettes, candy and chewing gum, the owner of the location of such machines receiving a percentage of the profits from the operation of the machine.

(b) The leasing of "digger" machines of a type into which the customer inserts a coin and may obtain various prizes, these machines being located within the state of Michigan and serviced by defendant's employees.

(c) Defendant also places in suitable locations pin ball machines whereby the operator, by the insertion of a coin, has at his disposal metal balls which when propelled establish electrical contacts resulting in certain scores which entitle the player to various types of merchandise.

(d) Retail sales also arise through the use by merchants of defendant's trading stamps, the merchants being supplied with samples of merchandise obtainable through the use of stamps, a stock of the merchandise so procurable being maintained at defendant's store. Those who have saved stamps are permitted to redeem them at defendant's store. The number of stamps which defendant requires in exchange for merchandise is equivalent to the sale by defendant of the merchandise at his regular retail price. This results from the price which defendant places upon the stamps which he sells to merchants.

7. During the years covered by plaintiffs' claims, defendant's wholesale business amounted to from 8% to 17% of the total business.

8. Defendant purchases from outside the state of Michigan the stamps and merchandise which he sells, the goods being transported by interstate carriers who deliver the same to the defendant at the place of business in Grand Rapids where defendant has his retail store, at the rear of which he maintains his principal stock room where the merchandise not displayed in the store is either placed in bins or transferred to a nearby building which defendant uses as a second warehouse.

9. Upon receipt of vending or pin ball machines, they are uncrated at defendant's store room and set up and transferred to various locations for use, or, if not placed in immediate use, are transferred to defendant's warehouse.

10. All purchases of merchandise, machines, or pin ball games were made outright by the defendant and absolute title thereto passed to defendant upon delivery at his warehouse.

11. During the period covered by plaintiffs' claims, defendant sent machines to Chicago for repair or for trade-in on other machines. Of a total of approximately 250

machines on location, defendant, in 1938, returned 2; in 1939, 8; in 1940, 23; in 1941, 16; and in 1942, 3.

12. The amount of time spent by any of plaintiffs in unloading shipments of merchandise and machines from delivery trucks appears from the record to be trifling and unsubstantial, in comparison with their other duties.

13. All wholesale and retail sales and the location of vending machines, pin ball and other machines, after delivery at the warehouse, were wholly in intrastate commerce and were within a limited area near the city of Grand Rapids.

14. The various duties performed by the several plaintiffs herein in connection with defendant's business are as follows:

(a) Plaintiff Vander Bei was engaged principally in the office of defendant. She had general charge of the store, made both wholesale and retail sales, kept defendant's records of both wholesale and retail sales, and of the stamp department, paid freight bills, worked in defendant's stock room in unpacking and placing merchandise, checked newly arrived merchandise against the invoices, marked and priced merchandise, assisted in unloading merchandise, paid transportation charges to the interstate carrier, ordered merchandise by telephone, mail and written order, and several times a year made buying trips to Chicago.

(b) Plaintiff Mosher was a clerk in the store and worked as an assistant to and under the direction of plaintiff Vander Bei, frequently typing orders for merchandise which plaintiff Vander Bei prepared.

(c) Plaintiffs Ouendag and Rozell were engaged principally in the placing of and maintenance and operation of vending and pin ball machines. They helped unpack the machines upon delivery to defendant, set them up ready for operation, transported them to lessees at various locations, serviced them, and made collections for them. Sometimes they assisted in unloading from interstate carriers merchandise consigned to defendant.

(d) Plaintiff Cook was primarily a salesman of trading stamps and trading stamp merchandise and worked entirely within the state of Michigan. He sometimes assisted in unloading merchandise from interstate carriers or unpacking merchandise consigned to defendant.

### Conclusions of Law.

1. When the merchandise coming from without the state of Michigan by interstate carriers was unloaded at defendant's place of business, its interstate movement terminated. There is no evidence that the merchandise so delivered was subject to prior orders, contracts or understandings relative to subsequent delivery thereof to designated customers or locations.

2. The business transacted by defendant, both wholesale and retail, was essentially local.

3. Plaintiffs have not sustained the burden resting upon them to establish that a substantial part of their activities related to goods moving in the channels of interstate commerce.

4. No substantial portion of any of plaintiffs' work for defendant was in commerce or in the production of goods for commerce, and an order will therefore be entered dismissing the complaint.

### Opinion.

The findings of fact and conclusions of law filed herewith sufficiently disclose the scope of the issues.

In the recent case of Walling v. Jacksonville Paper Co., 63 S.Ct. 332, 87 L.Ed. ——, the following principles relative to the construction and application of the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., and pertinent to the facts of the instant case, were established:

1. The question of the Act's coverage depends on the special facts pertaining to the particular business, the applicability of the Act being dependent upon the character of the employee's work.

2. Unless a substantial part of an employee's activities related to goods whose movement in the channels of interstate commerce is affected, he is not covered by the Act.

3. All phases of a wholesale business selling intrastate are not covered by the Act solely because it makes its purchases interstate.

4. Construction of the words "in commerce" entails analysis of the various types of transactions and the course of the particular business.

5. All movements of goods from manufacturers to wholesalers and on to retailers, where the wholesalers and retailers are in the same state, are not "in commerce" within the meaning of the Act.

6. The Act does not extend to all businesses and transactions "affecting commerce". Congress in enacting the statute did not exercise the full scope of the commerce power. It plainly indicated its purpose to leave local business to the protection of the states.

7. The fact that wholesalers doing a local business are in competition with wholesalers doing an interstate business, and that the latter would be prejudiced by noncompliance by the intrastate business with the same labor standards, is not pertinent.

8. Goods delivered pursuant to a prior order, contract, or understanding with the dealer's customers must be included in the group of transactions held to be "in commerce", such facts being sufficient to establish that practical continuity in transit necessary to keep movement of goods "in commerce"; but the fact that most of the customers form a fairly stable group whose orders are recurrent as to kind and amount of merchandise desired so that the manager can estimate with precision the needs of his trade does not necessarily justify the inference that the transaction is in commerce.

Application of these principles to the facts found in the instant case results in the conclusion that plaintiffs' activities were not covered by the Act. The business of defendant, in both its wholesale and retail aspects, was essentially a local one. It cannot fairly be said that defendant's warehouse was used merely as a subterfuge or as a temporary stop in an interstate journey of the merchandise to a predetermined destination. In the interstate journey which terminated at the warehouse, none of plaintiffs can be held to have taken a substantial part. The fact that some of them at various times assisted in unloading the merchandise from trucks is not convincing that they were charged with such responsibility as a substantial part of their duties—certainly not to the extent that the duties performed materially affected commerce. Nor does the placing of orders for the merchandise by mail or an occasional trip outstate to purchase goods for an essentially local business lead to the belief that interstate commerce in the merchandise so ordered was sufficiently affected thereby to bring the transactions within the scope of the Act. Only by giving the Act the construction repudiated by the Supreme Court in the case of Walling v. Jacksonville Paper Co., supra, could the casual and comparatively minor duties performed in connection with the ultimate deposit of the goods in defendant's warehouse be said to "affect commerce".

The complaint must therefore be dismissed.