**DALY v. CITRIN et al.**

No. 2031.

District Court, E. D. Michigan, S. D.
Nov. 30, 1943.

I. W. Ruskin, of Detroit, for plaintiff.

MacMahon, Abbott & Roberts and Arthur J. Abbott, all of Detroit, for defendants.

O'BRIEN, District Judge.

This is an action by Bernard R. Daly, as agent for certain employees of Citrin-Kolb Oil Company, to recover alleged unpaid overtime wages, together with statutory penalties and costs, pursuant to the Federal Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.

The facts are as follows:

Citrin-Kolb Oil Company is a partnership consisting of Jacob A. Citrin, Barney Citrin, Nathan Kolb and Mollie Kolb, and is engaged in the wholesale and retail distribution of gasoline and other petroleum products and automobile accessories in the Detroit, Michigan area. None of its distribution of such commodities is conducted outside of the State of Michigan. The major part of its business is wholesale in character, consisting in the furnishing of gasoline and other products mentioned, to the operators of retail gasoline stations all situated in Wayne and Oakland Counties within said State. Its retail operations constituted only about fifteen percent of its total business during the period involved in this action, such operations having been occasioned by the fact that whenever a retail outlet owned or leased by the company could not be leased or sub-leased to an independent retail distributor, the company operated the station itself.

It further appears from the testimony that Citrin-Kolb Oil Company never has done any producing nor processing of any of the commodities in which it deals; its function having always been, during the time of its existence, to engage in the distribution thereof in their original form and condition. It does not, according to the testimony, "engage * * * in the production of goods for commerce."

The action, though originally instituted by twelve employees of defendant, was at the trial limited to the claims of three employees, Charles Arnold, Samuel Rutsky and Saul Friedman, all of whom, in 1938, 1939 and 1940, were truck drivers engaged in the driving of tank delivery trucks or "wagons" transporting gasoline, motor oil, tires, tubes, batteries and other petroleum products and automobile supplies from the company's bulk plant and warehouse, located at Livernois Avenue and Detroit Terminal Railroad in Detroit, to the various retail automobile service stations serviced or operated by the company.

The claimant truck drivers all did work of substantially the same type, and were paid wages at the same rate per hour. It was admitted by defendants that, during the period in question, they worked overtime upon occasions, for which overtime they were, it was acknowledged by plaintiff, paid at the regular wage rate but not at the time and a half rate. Defendants claimed they were not obligated to pay for overtime at the latter rate, because their operations were and are wholly intra-state in character and because the truck drivers in question were neither engaged in inter-commerce nor in the production of goods for interstate commerce. This claim requires brief comment upon the manner in which, according to the testimony, the defendant acquired its suppply of gasoline and the other commodities distributed by it.

The testimony disclosed that Citrin-Kolb Oil Company, during all the time in question, was a jobber customer of Standard Oil Company of Indiana. Paul A. Raupagh, Manager of the Detroit Division of the latter company, testified as to the manner of supplying the merchandise requirements of the defendants, as follows:

Standard Oil Company manufactures gasoline, motor. oil and other petroleum products at various refineries in states other than Michigan. All the refining and. manufacturing for the Detroit area requirements are conducted at its Whiting, Indiana refinery, located on the lake front on the south shore of Lake Michigan, near Chicago. From this refinery gasoline and other petroleum products are shipped in company owned boats through Lake Michigan and the Straits of Mackinac and thence southward through Lake Huron, St. Clair River, Lake St. Clair and Detroit River to the Standard Oil Company's marine terminal at River Rouge, Michigan, where they come to rest, being unloaded into tanks and commingled with other merchandise of like kind previously transported in like manner.

The lake route from Whiting, Indiana, to River Rouge, Michigan, is not open during the winter months, by reason of the frozen condition of the Great Lakes and their tributaries, and Standard Oil Company therefore builds up a sufficient storage of products at its River Rouge marine terminal during the summer months to last during the entire winter. It has a storage capacity at the terminal of 1,500,000 barrels of forty-two gallons capacity each.

It further appears from the testimony that when shipments of petroleum products arrive by boat at Standard Oil Company's marine terminal at River Rouge, they are not earmarked for any particular customer or to fill any particular contract or order. Standard Oil Company ships such products from Whiting to the marine terminal with

the view of storing them, so that they may later be sold and delivered from such storage terminal to any customer, of any classification, in the Detroit Division of the company's operations.

Citrin-Kolb Oil Company is one of the four jobber customers of Standard Oil Company in the Detroit area—the other jobber customers being Ned's Auto Supply Company, Wayne Oil Company and Stikeman Oil Company. All the jobbers, during the period involved in this action, purchased gasoline from Standard Oil Company in tank car deliveries, but without any contract basis, the deliveries having been made on day-to-day orders transmitted by the jobbers to the office of the Detroit Division of Standard Oil Company in Detroit; orders having been taken and filled at the regular reseller tank car prices and in carload shipments.

Shipment of the railroad tank cars, after the same were loaded at the marine terminal, was made, during the period in question, by a common carrier—Detroit Terminal Railroad—to the Citrin-Kolb Oil Company bulk plant and warehouse located on Linwood Avenue at the railroad intersection in the City of Detroit. After being placed on a sidetrack there, the contents were unloaded by Citrin-Kolb employees, other than those involved in this case, into tanks and warehouses of the Citrin-Kolb bulk plant, where they came to rest and remained until loaded into the trucks driven by the truck drivers, Arnold, Rutsky and Friedman. The above are the essential and controlling facts, subject to some exceptions which will be later discussed.

■ Based on these facts, which are uncontroverted, the court is of the opinion and holds that interstate movement of the petroleum products, imported into the River Rouge marine terminal, ceased at the point of their unloading from the boats into the tanks of the terminal for storage within the State of Michigan. At that point they definitely came to rest and became commingled with other personal property within the State of Michigan; and thenceforth upon being reloaded for shipment to Citrin-Kolb Oil Company, they moved exclusively in intrastate commerce. Therefore, it cannot be said that the activities of any of the three truck drivers involved in this action were either in commerce or in the production of goods for commerce, within the meaning of the Fair Labor Standards Act, 29 U.S.C.A. § 206.

■ The words "in commerce", as employed in said statute, denote commerce of an interstate or foreign character. Moreover, they are not tantamount to the words "affecting commerce" as used in the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. They do not refer to transactions "affecting commerce", but only to transactions "in commerce". A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 522, 523; 62 Sup.Ct. 1116, 86 L.Ed. 1638, 1646, 1647; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, decided January 18, 1943.

Although there are many holdings to the contrary, the view adopted by the court is undoubtedly according to the great weight of authority, and finds support in many recent decisions of the Federal Courts and of the Supreme Court of the United States, of which the following are noteworthy: Higgins v. Carr Brothers Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468, decided January 18, 1943; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, decided January 18, 1943; Atlantic Coast Line R. Co. v. Standard Oil Co. of Kentucky, 275 U.S. 257, 48 S.Ct. 107, 72 L.Ed. 270; Schecter Poultry Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 97 A.L.R. 947, 79 L.Ed. 1570; Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202; Ouendag v. Gibson, D.C., 49 F.Supp. 379; Walling v. Sanders, D.C., 48 F.Supp. 9.

The most recent case which accords with the court's opinion is Lewis v. Shell Oil Co., 50 F.Supp. 547, decided by the District Court of the United States for the Northern District of Illinois on June 14, 1943.

■ It further appeared from the testimony that during the years 1938, 1939 and 1940, Citrin-Kolb Oil Company purchased and took delivery of three tank carloads of gasoline shipped direct by railroad from the Whiting, Indiana refinery to its bulk plant in Detroit; also that during those three years it received twelve carload shipments of "Quaker State" motor oil by interstate rail shipment direct from the manufacturer of such oil at Emlenton, Pennsylvania. All other commodities purchased by Citrin-Kolb Oil Company, during that period, including tires, tubes, batteries and other automobile supplies, were shipped to it either from the Standard Oil marine

terminal at River Rouge, or from one of the Standard Oil bulk plants in Detroit. It was testified by Max Biber, General Manager of Citrin-Kolb Oil Company at that time, that these direct shipment purchases from the Whiting, Indiana refinery were casual, emergency consignments made during the winter months, when lake navigation was closed; and he further testified that the total of all such direct shipment transactions constituted less than one-half of one percent of his company's purchases during the period in question. The maxim "de minimis non curat lex" clearly applies to these transactions, which were so negligible as not to affect the basic nature of the business engaged in by defendant company and its employees. Cron v. Goodyear Tire & Rubber Co., D.C., 49 F.Supp. 1013; Goldberg v. Worman, D.C., 37 F.Supp. 778.

At the close of the plaintiff's case and also at the close of all proofs, defendants interposed on the record a motion to dismiss the complaint. The motion is granted, and an order may be entered accordingly.