**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**M & B CONSTRUCTION COMPANY, Inc., a Corporation, Raymond J. Mears and Cecil Loy, Defendants.**

**No. 11111–M–Civil–DD.**

United States District Court
S. D. Florida,
Miami Division.

Feb. 19, 1963.

As Amended March 18, 1963.

Beverley R. Worrell, Regional Atty., U. S. Dept. of Labor, Birmingham, Ala., for plaintiff.

Prebish & DuVal, Miami, Fla., for defendants.

WHITEHURST, District Judge.

The Secretary of Labor, plaintiff in this action, seeks to restrain defendants M & B Construction Company, Inc., et al., from violating the provisions of Sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended, (52 Stat. 1060, as amended, 29 U.S.C. § 201 et seq.), hereinafter referred to as the Act.

The pleadings raising the issues in this action are plaintiff's Complaint,

**170**

filed November 6, 1961, defendants' Answer, consisting of a general denial of the material allegations of plaintiff's Complaint, served on plaintiff February 8, 1962, and the parties' pre-trial Stipulation heretofore filed herein, which Stipulation is a part of the record in this action.

On November 15 and 16, 1962, the issues were tried to the Court sitting without a jury. Based on the Complaint and Answer, the pre-trial Stipulation of the parties and the testimony of witnesses and exhibits received in evidence on the trial of this action the Court now enters its Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Defendant, M & B Construction Company, Inc., a Corporation, is now, and at all times material hereto subsequent to January 4, 1960, was a corporation organized under and existing by virtue of the laws of the State of Florida, having its principal office and place of business at 618 N.E. 8th Street, Hallandale, Broward County, Florida, within the jurisdiction of this Court, with an office also located on Gallagher Road, Plant City, Hillsborough County, Florida, within the jurisdiction of this Court and is, and at all times material hereto subsequent to January 4, 1960, was engaged as an independent contractor in the installation of gas distribution pipelines for local companies engaged in selling gas to individual consumers.

2. Defendant, Raymond J. Mears, resides at 701 N. E. 137th Street, Miami, Dade County, Florida, within the jurisdiction of this Court, and is secretary-treasurer of the defendant corporation. In his capacity as secretary-treasurer, the said Raymond J. Mears actively supervises and directs the business affairs and operations of said corporation in relation to its employees.

3. Defendant, Cecil Loy, resides at 88 Glendale Drive, Miami Springs, Dade County, Florida, within the jurisdiction of this Court, and is president of the defendant corporation. In his capacity as president, the said Cecil Loy actively supervises and directs the business affairs and operations of said corporation in relation to its employees and he is, therefore, an employer of said employees.

4. Defendants, Raymond J. Mears and Cecil Loy are co-partners in a partnership known as M & B Construction Company having their principal office and place of business at 618 N.E. 8th Street, Hallandale, Broward County, Florida, within the jurisdiction of this Court, where they are now engaged as independent contractors of gas distribution pipelines for local companies engaged in selling gas to individual consumers.

5. At all times material to this action subsequent to January 4, 1960, defendant corporation has operated principally in the Tampa area of defendants' combined operations.

6. At all times material to this action defendants Raymond J. Mears and Cecil Loy, partners doing business as M & B Construction Company, have operated primarily in the Miami area of defendant's combined operations.

7. During the period since January 14, 1959, and until the present time defendants have regularly contracted, as an independent contractor, with the Florida Gas Utilities Corporation of Miami, Florida, and the Peoples Gas System, Inc., of Miami, Florida, and Tampa, Florida to extend their existing gas distribution pipeline system, by installing new gas distribution pipelines to new gas consumers and customers in the same local area.

8. The gas pipelines referred to in paragraph 7 hereof were and are designed to transmit and do transmit natural gas through said gas pipelines.

9. The natural gas referred to in paragraph 8, above is produced in oil fields located in the States of Texas and Louisiana and is transmitted from said oil fields to the Florida Gas Company inside the State of Florida. Florida Gas Company wholesales and transmits this natural gas within the State of Florida,

to other wholesaling transmission lines, one of their wholesale customers being the Florida Gas Transmission Company, who, after receiving this gas within the State of Florida, transmits and delivers it to their wholesale customers, amongst which are the Peoples Gas System, Inc., of Miami and Tampa, Florida and the Florida Gas Utilities Corporation in Miami, Florida. These several gas transmission companies have connecting transmission lines which permit the gas to be transmitted from its out of state source to the local utilities firms in a continuous movement, not substantially interrupted in route or changed by any process, until it reaches the utilities firms where it is processed, by them, for delivery and sale to their local consumers as described in paragraph 10.

10. The said natural gas is delivered to and purchased by Peoples Gas System, Inc. and Florida Gas Utilities Corporation at points prior to being introduced into their distribution system, for delivery to their customers. The gas is received at these points at pressures varying from 100 to 150 pounds at which place it is necessary for the gas utilities firms to reduce the pressure of the natural gas, vaporize, odorize and oil fog the gas prior to its being introduced into the distribution pipeline system for sale to customers. The operation conducted by the local gas utilities firms described above are primarily automatic processes which are performed at the various gate stations owned and operated by the local gas utilities. A reduced pressure continues to impel the natural gas through the distribution lines of the gas utilities firms. These distribution lines are never used to transport any product outside of their local area.

11. The pressure which impels the gas to the utilities firms and on through their distribution systems originates South of Orlando, Florida, at a compressor station owned and operated by Florida Gas Transmission Company.

12. Peoples Gas System, Inc., in both Tampa and Miami, Florida, as well as the Florida Gas Utilities Corporation are local businesses, solely engaged in the local retail sale of natural gas to the ultimate user of this product. The gas sold by these firms is purchased by them from the Florida Gas Transmission Company, a Florida wholesaler, operating entirely within the State of Florida.

13. There was no contention made or proof offered that any of the gas purchased by these firms was used in the "Production of goods for commerce".

14. The sole question raised by the parties and the pleadings, relating to the effect of the Act, was whether or not the local gas distribution lines owned and operated by the local utilities firms for the delivery of natural gas to their ultimate retail consumer is, under the facts produced, an integral part of an interstate transmission system of natural gas so as to cause the defendants, engaged in maintaining and extending the said local gas distribution system, to be engaged "in commerce" within the meaning of the Act.

15. At all times material to this action defendants employed a substantial number of employees at both their Tampa and Miami areas of operations in building, maintaining and repairing natural gas transmission lines of Peoples Gas System, Inc. and Florida Gas Utilities Corporation. Such activities involved work upon both distribution mains and upon service lines running from distribution mains to the homes and places of business of the various customers of the gas utilities firms mentioned herein.

16. Defendants employed some of these employees for work weeks in excess of 40 hours ranging from 60 to 75 hours per week and compensated such employees for the hours they worked in excess of 40 hours per week, as aforesaid, at their regular hourly rates of pay without additional compensation for the hours they worked in excess of 40 in a workweek.

17. At all times material to this action defendants failed to keep and maintain an adequate and accurate rec-

ord of their employees and of the wages, hours and other conditions and practices of employment maintained by them with respect to such employees, as required by the Act.

18. Upon proper demand, defendants failed to make available such records as they had regarding their employees to the duly authorized and designated representative of the Administrator of the Wage and Hour and Public Contracts Divisions, United States Department of Labor.

## . CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties of this action and of the subject matter thereof.

2. The Court has reviewed and considered the case of Walling v. Jacksonville Paper Company, 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, cited as authority by the plaintiff. In this case the Supreme Court held that special goods, ordered from out of state manufacturers by a wholesaler intended to be immediately delivered to the customer ordering these products, within the same state, remained "in commerce" until they were delivered to the wholesaler's customers, regardless of any change of title or the temporary holding or storing of these products in transit. The Supreme Court further held that the contract or understanding pursuant to which goods are ordered, like special orders, indicating where it was intended that the interstate movement should terminate. In the case at hand, it is apparent from the evidence, that the interstate movement was intended to and did terminate at the gate stations owned and operated by the local utilities firms.

The nature of the gas transmitted from outside the State of Florida to and through the transmission lines of the Florida Gas Company and from them to and through the transmission lines of the Florida Gas Transmission Company, for delivery at the gate stations of the utilities firms, was and did remain "in commerce" until delivered to these gates of the utilities firms, regardless of any prior change of title or storage in route.

However, the nature of this gas changed, after being delivered to the local utilities firms, to a commodity being sold to local customers (all ultimate consumers), delivered through a local distribution system, solely owned and operated by local business merchants, for the furtherance of the sale of their product to their customers. This gas is not "in commerce" while being transmitted through the local gas distribution systems, owned by the local utilities firms, in the furtherance of their local sales.

The Walling case does not extend the jurisdiction of the Act to the transit of goods by a local distribution system operated by local business in furtherance of their local sales.

3. The local distribution pipelines systems, owned and operated by the local utilities companies, are not an integral part of an interstate transmission system and are not instrumentalities of commerce within the meaning of the Act.

4. The transmission of natural gas through local distribution systems, owned and operated by local utilities firms, not engaged in the production of goods for interstate commerce, in the furtherance of their local sales is intrastate in character and persons maintaining and extending such local distribution systems are not "engaged in commerce" within the meaning of the Fair Labors Standard Act. Jax Beer Co. v. Redfern, 124 F.2d 172 (5th C.C.A.).

5. The defendants are not subject to the provisions of the Act.

6. The Clerk of this Court is hereby directed to enter a dismissal of plaintiff's complaint.

Let judgment be entered accordingly.