W. Willard **WIRTZ**, Secretary of Labor, United States Department of Labor

v.

**INDIANA CABLEVISION, INC.,** a Corporation.

No. EV 66–C–46.

United States District Court
S. D. Indiana,
Evansville Division.

June 29, 1967.

Charles Donahue, U. S. Dept. of Labor, Herman Grant, Edward A. Bobrick, Chicago, Ill., for defendant.

Ralph Zoercher, Gary E. Becker, Tell City, Ind., for defendant.

## OPINION

HOLDER, District Judge.

The action involves a suit by the United States Secretary of Labor to enjoin the defendant, Indiana Cablevision, Inc., an Indiana corporation, from violating the provisions of Section 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938 as amended (29 U.S.C. Section 201 et seq.). The complaint charges that the defendant has employed many of its employees in commerce or in the production of goods for commerce within the meaning of the Act, for work weeks longer than forty (40) hours without compensating said employees for their employment in excess of forty (40) hours in such work weeks at rates required by the Act; it further charges that defendant has not made, kept and preserved adequate and accurate records of such employees and

of the wages, hours, and other conditions and practices of employment maintained by the defendant, as prescribed by regulations duly adopted and published pursuant to authority granted in the Act. (29 C.F.R. 516).

The defendant filed a Motion to Dismiss the complaint and it is denied. Plaintiff filed a Motion for Summary Judgment and ruling thereon is deferred. The parties, by stipulation filed with this Court on May 25, 1967, have agreed that the defendant has violated the portions of the Act alleged in the complaint and that summary judgment should be granted to the plaintiff, if, in fact, the Fair Labor Standards Act is applicable to the defendant. The defendant thereby preserved the issue raised by its Motion to Dismiss as to whether the defendant's employees were "engaged in commerce or in the production of goods for commerce" within the meaning of the Fair Labor Standards Act?

The motion admits the pertinent facts of the complaint relating to this issue, that the defendant, Indiana Cablevision, Inc., is an Indiana corporation having an office and place of business at 240 13th Street, Tell City, Perry County, Indiana, and is engaged in the business of selling relayed television broadcasts to home viewers; and that defendant employs approximately five (5) employees in its business, and elsewhere, in installing, operating, maintaining, servicing and constructing apparatus and equipment which is utilized to relay national television broadcasts to home viewers who were defendant's subscribing customers,[1] a substantial portion of which broadcasts have been received and will continue in the future to be received from points outside the State of Indiana.

The threshold question presented to the Court is whether or not the defendant's business is itself an instrumentality of commerce? This ap-

1. Plaintiff's complaint does not allege that the subscribing customers of defendant were interstate or intrastate. It will be assumed for the purposes of the ruling that the subscribing customers of the defendant were all home viewers located within Perry County, Indiana.

pears to be a case of first impression in the field.[2] The question must be answered in the affirmative. The defendant receives television broadcasts, a substantial portion of which originate in other states and relays such broadcasts to its subscribers who are all located within the State of Indiana. Defendant contends that since it did not transmit or relay any of those broadcast signals to any point beyond the borders of the State of Indiana, it is not engaged in interstate commerce within the meaning of the Act. It is unquestioned that radio and television broadcasts generally are a subject of interstate commerce. Allen B. Dumont Laboratories v. Carroll, 184 F.2d 153 (CCA 3 1950), cert. den., 340 U.S. 929, 71 S.Ct. 490, 95 L.Ed. 670; Whitehurst v. Grimes, 21 F.2d 787 (D.C.E.D. Ky.1927); American Bond & Mortgage Co. v. United States, 52 F.2d 318 (CCA 7 1931). Defendant's conclusion is erroneous. It engaged in interstate commerce when it received broadcasts from points outside the State of Indiana and relays such to the ultimate consumer within Indiana. These broadcasts are intended by their producers to be viewed interstate, and efforts of the defendant which effectuate this purpose in the Perry County, Indiana, area make the defendant's business a conduit and handler of interstate commerce. The case of Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1942) clearly demonstrates this principle. There the Court stated the sole issue to be whether or not the Fair Labor Standards Act was applicable to employees, who "though constantly receiving merchandise on interstate shipments and distributing it to their customers, do not ship or deliver any of it across state lines". The Court held that the Act did apply to such employees where once the goods had entered the channels of interstate commerce intended for cus-

tomers whose prior orders or contracts were being filled they retained their character as goods in interstate commerce until finally delivered to the customer, and that they were not divested of that character by a temporary pause at the warehouse. The Court reasoned that "if the halt in the movement of the goods is a convenient intermediate step in the process of getting them to their final destinations, they remain 'in commerce' until they reach those points". The principle is also demonstrated in the case of Walling v. Goldblatt Bros., 128 F.2d 778 (CCA 7 1942), where the Court held, "Where orders are solicited within a state and the goods are shipped from without the state directly to the customer or to an agent for delivery to the customer the transactions are a part of interstate commerce until the goods reach the customer." These principles clearly apply to the present case. The broadcasts were interstate in character when received by the defendant, and they retained that character until they reached their final destination—the viewer who subscribes to defendant's service in Perry County. The broadcasts are in the process of being sold on direct order to the viewer in Perry County, with the defendant acting as an agent or middleman in the transaction. Neither will any slight pause, if any, between receipt of the broadcasts and their actual transmission to the home viewer deprive the broadcasts of their interstate character. The case of Lorain Journal v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951), although decided under the Sherman Act, announces the same principle. There it was suggested to the Court that the fact that the defendant distributed approximately one per cent (1%) of its newspapers out-of-state could be used as a basis for classifying its operation as one in interstate commerce. The Court,

---

2. Plaintiff asserts that the case of Mitchell v. Rennekamp, 251 F.2d 488 (CCA 3 1957) decided this issue. Although the question was argued in the briefs, the Court, in its per curiam opinion, did not discuss the fact that the defendant radio station's broadcasting radius was exclusively intrastate in holding that the defendant's employees were within the coverage of the Act.

however, stated that it was unnecessary to rely on this fact for a determination of the question, for "The distribution *within Lorain* of the news and advertisements transmitted to Lorain in interstate commerce for the sole purpose of immediate and profitable reproduction and distribution to the reading public is an inseparable part of the flow of the interstate commerce involved." (emphasis supplied) The defendant in the instant case is a corporation, organized for profit with one basic product to sell—broadcasts received by it through the channels of interstate commerce. The originators of these interstate broadcasts and the advertisers which finance them have necessarily become dependent upon the interposition of defendant's services to carry these broadcasts and commercial messages to viewers in Perry County. So also have the subscribing customers in Perry County become dependent upon the defendant's services to bring interstate broadcasts into their homes for their pleasure and enlightenment. Defendant's business thereby becomes an integral part of the flow of interstate commerce from the rest of the nation to Perry County, Indiana, and therefore subject to regulation of its employment practices under the broad commerce power vested in Congress. The fact that the defendant does not relay broadcasts across state lines does not make its business intrastate. In Mitchell v. Rennekamp, 251 F.2d 488 (CCA 3 1957), the defendant argued in its brief that it was not engaged in interstate commerce under the Fair Labor Standards Act, for its radio station had a power of only one hundred (100) watts and a radius of ten (10) miles, and the station was located at a distance of fifty-one (51) miles from the nearest state line. The Court made no reference to the contention but held in its per curiam opinion that as the defendant was an associate member of the Associated Press and had a teletype machine of that organization in its office from which it received world and national news on a twenty-four (24) hour a day

basis for broadcast purposes, it was engaged in interstate commerce.

Another case, although decided under the Federal Communications Act, teaches the same basic principle, Idaho Microwave, Inc. v. F. C. C., 352 F.2d 729 (C.A. D.C.1965). Idaho Microwave applied to the Federal Communications Commission for a permit to enable it to extend its service to Burly, Idaho, so that it could deliver signals from four (4) Salt Lake City, Utah, television stations to a cable television system in Burly. The Court, in ruling on the interstate commerce question held that "The Burly facility is used as a link in the continuous transmission of television signals from Salt Lake City to Burly, Idaho; * * Thus though Idaho Microwave's physical facilities are located within Idaho, it performs an interstate communication service when it takes part in the transmission of signals from Utah to Idaho."

The cases cited by the defendant do not support the position that the defendant was not engaged in interstate commerce within the meaning of the Act. The majority of defendant's cases involve transactions where the goods coming from without the state were not shipped directly to customers or an agent for delivery to customers, but had definitely come to rest at a warehouse or other place within the state. Schroepfer v. A. S. Abell Co., 138 F.2d 111 (CCA 4 1943); Daly v. Citrin, 53 F.Supp. 876 (E.D.Mich.S.D.1943); Wirtz v. M & B Construction Company, 216 F.Supp. 169 (D.C.S.D.W.Va.1963); Ouendag v. Gibson, 49 F.Supp. 379 (D.C.W.D.Mich.S.D. 1943); and Higgins v. Carr Bros. Co., 317 U.S. 572, 63 S.Ct. 337, 87 L.Ed. 468 (1943). In the Higgins case, the United States Supreme Court held that the defendant there was not engaged in interstate commerce for the reason that the products it received from without the state were stored at the warehouse and from there sold to the retail trade. The defendant made no sales on commission nor on order with shipments direct from the producer to the retail purchaser. Therefore, the Court reasoned that un-

like the Walling case, "when the merchandise coming from without the state was unloaded at respondent's place of business its 'interstate movement had ended.'" In the instant case, however, the defendant must necessarily solicit subscribers, and the broadcasts are transmitted directly to them with the defendant merely acting as an agent to effectuate delivery of the broadcasts to the subscribers. Therefore, the broadcasts remain "in commerce" until they reach their final destination. Another of defendant's cited cases, Wirtz v R. E. Lee Electric Company, 339 F.2d 686 (CCA 4 1964), does indeed hold that a radio communication is within interstate commerce where its facilities are used to transmit from one state to another, but the case does not by any means hold that this is the only criterion. The case does not bear upon the factual issues raised here and does not point the way for the conclusion pressed by the defendant.

The final question raised by defendant's Motion to Dismiss is whether or not defendant's employees are engaged in commerce or in the production of goods for commerce? It is well established that coverage under the Act depends upon the character of the employment and not the nature of the employer's business. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1941); Walling v. Jacksonville Paper Co., supra; Rucker v. First Nat. Bank of Miami, Okl., 138 F.2d 699 (CCA 10 1943). The employees of the defendant who were engaged "in installing, operating, maintaining, servicing, and constructing apparatus and equipment which is utilized to relay national television broadcasts to defendant's subscribing customers", as alleged in the complaint, are engaged in such work as would satisfy the test set down by the Supreme Court—that such employment be "so directly and vitally related to the functioning of an instrumentality * * * of interstate commerce as to be, in practical effect, a part of it". Mitchell v. C. W. Vollmer & Co.,

349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196 (1955). Such pleaded employment is directly and vitally related to the functioning of the instrumentality of commerce. In fact, without such the instrumentality itself could obviously not function.