PER CURIAM.
Hugh Stewart and Kameron Hyde, the plaintiffs in actions pending in the Jefferson County Circuit Court, have petitioned for a writ of mandamus directing the trial court to vacate its order compelling them to submit their claims to arbitration. We deny the writs.
The Birmingham News newspaper is published by The Birmingham News Company (“The News”) and is sold through a mixed distribution system consisting of employees of The News and independent dealers (“Dealers”) who are authorized to act as the exclusive distributors of the newspaper in specific geographical areas. The plaintiffs became Dealers by executing an “Independent News Dealer Agreement” (the “Agreement”) with The News — Stewart in 1988 and Hyde in 1994. Pertinent portions of the Agreement read:
“4. Deliveries:
“[Dealers] shall make regular and prompt deliveries on the date of publication of complete newspapers intact, including preprints, supplements, and inserts designed by [The News] only, to his subscribers and customers in a man *466 ner satisfactory to them (e.g., in a dry and readable condition)....
[[Image here]]
“8. Term:
“This Agreement shall exist and be in force until [one year from date of execution], and thereafter shall be automatically renewed from year to year unless terminated by either party by giving the other party written notice of termination on or before thirty (30) days prior to the annual renewal date. In the event of the failure of either party to perform any of its obligations under the Agreement, the other party may terminate this Agreement upon prior written notice, subject, however, to the provision of Paragraph 10 herein. Notice shall be given hereunder by depositing the same in the United States mail, postage prepaid, and addressed to the other party at his business hereinabove set out.
[[Image here]]
“10. Arbitration:
“Except as herein provided, and as provided in any other provision of this Agreement, all claims and controversies arising out of this contract shall be submitted to arbitration for determination. It is agreed, however, that if either party shall terminate this contract by reason of the alleged breach thereof by the other party, the sole issues for determination shall be whether or not the termination was valid, whether or not either party shall be entitled to money damages, and, if so, the amount thereof, which issues only shall be submitted to arbitration. It is expressly agreed that in case of such termination neither party shall be entitled to have this Agreement reinstated nor to be restored to his or its status thereunder, notwithstanding the fact that it may be determined that the termination by the other party was not warranted.... ”
According to the plaintiffs, in 1997 The News made changes to its distribution system that adversely affected the Dealers’ ability to function properly under the Independent News Dealer Agreement. For example, the plaintiffs contend that The News changed its customer-rating procedures in a way that caused Dealers to be held responsible for complaints about service problems over which they had no control. In 1998, The News notified the plaintiffs that their Agreements would not be renewed because, it said, complaints about their service “were at a totally unsatisfactory level.”
Although the Agreement provided that either party could terminate it without cause by giving written notice 30 days before its expiration, the plaintiffs sued The News, each alleging that the Agreement obligated The News to act in good faith and to maintain a relationship with a Dealer as long the Dealer performed satisfactorily, and that the “unsatisfactory-performance” reason given for nonrenewal of their contracts was a pretext. The plaintiffs claimed that The News had engaged in .a scheme designed to eliminate the Dealers and to obtain their distributorships (which, the plaintiffs allege, had become very profitable over the years), without compensation, in order to obtain the Dealers’ profits and to establish a monopoly in the newspaper publishing and retail-distribution market. The plaintiffs alleged breach of contract, fraud, conspiracy, violation of Alabama’s antitrust statute (Ala. Code 1975, § 6-5-60), unjust enrichment, tortious interference with a business relationship, and deceptive trade practices.
The News moved to stay the proceedings in the circuit court and to compel arbitration pursuant to Paragraph 10 of the Agreement. The plaintiffs opposed the motion. After a hearing on the motion, the trial court granted it and ordered *467 the parties to arbitrate. The plaintiffs now seek a writ of mandamus directing the trial court to vacate its order compelling arbitration of their claims against The News.
Mandamus is an extraordinary remedy and requires a showing of 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court. When an appellate court engages in mandamus review of a trial court’s order granting a motion to compel arbitration, the appellate court applies a de novo standard of review. See Ex parte Inverness Constr. Co., 775 So.2d 153 (Ala.2000); Ex parte Stamey, 776 So.2d 85 (Ala.2000); Ex parte Roberson, 749 So.2d 441 (Ala.1999).
In Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the United States Supreme Court held that the words “involving commerce” in the Federal Arbitration Act, 9 U.S.C. § 2 (“FAA”), are broader than the often-found words of art “in commerce.” The Court held, therefore, that they cover more than only persons or activities within the flow of interstate commerce. See Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974) (defining “in commerce” as related to the “flow” and defining the “flow” to include “the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer”). The Court went on to hold that the word “involving” is the functional equivalent of the word “affecting,” and that the phrase “affecting commerce” normally signals a congressional intent to exercise its Commerce Clause powers to the full. 419 U.S. at 201, 95 S.Ct. 392.
The plaintiffs contend that nothing in the Agreement indicates that it involves interstate commerce within the meaning of the FAA; they further contend that an affidavit filed by The News in support of its motion merely established that The News engages in interstate commerce. The plaintiffs argue that the trial court erred by focusing, they say, on the “overall business” of The News rather than on the limited transactions evidenced by the Agreement.
The News bore the burden of proving to the trial court that the Agreement involved interstate commerce, so as to invoke the FAA and render enforceable the arbitration clause in the Agreement. Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000); Transouth Fin. Corp. v. Bell, 739 So.2d 1110 (Ala.1999).
Attached to The News’s motions to stay the civil actions and to compel arbitration were affidavits of Toby Pearson, the circulation director for The News. In his affidavits, Pearson acknowledged that the plaintiffs and The News had entered into the Agreement and that under the Agreement the plaintiffs bought complete newspapers from The News and distributed them to homes, newsstands, news racks, and other places within defined territories for the period of a year. Pearson affirmed:
“3. Virtually all of the inserts that are included as part of The Birmingham News, such as Sunday comics, Parade magazine, React magazine, and advertising inserts for national retail chains such as Rich’s, Sears, and others, are prepared, printed, and shipped to The News from companies located outside the State of Alabama.
“4. The News also obtains a significant portion of its news content and photographs from outside the State, un *468 der agreements with news services such as The Associated' Press, Universal Press, Knight Ridder Tribune, and King Features.”
The plaintiffs do not dispute this. Therefore, the Agreement required them to distribute advertising inserts designated by The News as part of the complete newspaper, which were prepared, printed, and shipped to The News in interstate commerce, and news content, designated as part of the complete newspaper by The News, that was obtained by The News in interstate commerce.
Did the flow of interstate commerce end when these inserts and this news content were delivered to The News? The plaintiffs contend it did, and the dissenting Justices agree. The plaintiffs cite the following cases to support their contention: United States v. American Bldg. Maintenance Indus., 422 U.S. 271, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975); Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943); Burke v. Ford, 377 F.2d 901 (10th Cir.1967); Page v. Work, 290 F.2d 323 (9th Cir.1961); Wirtz v. M & B Constr. Co., 216 F.Supp. 169 (S.D.Fla.1963); Ouendag v. Gibson, 49 F.Supp. 379 (W.D.Mich.1943); Hurst v. Tony Moore Imports, Inc., 699 So.2d 1249 (Ala.1997).
The News contends that the plaintiffs were an integral part of a system for delivering commercial advertising distributed in interstate commerce, citing, among other cases, Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951); and Evening News Publ’g Co. v. Allied Newspaper Carriers of New Jersey, 263 F.2d 715 (3d Cir.1959), cert. denied, 360 U.S. 929, 79 S.Ct. 1449, 3 L.Ed.2d 1544 (1959).
In Lorain Journal, the United States Supreme Court analyzed the interstate activity of a daily newspaper located in Lo-rain, Ohio:
“The distribution within Lorain of the news and advertisements transmitted to Lorain in interstate commerce for the sole purpose of immediate and profitable reproduction and distribution to the reading public is an inseparable part of the flow of the interstate commerce involved.”
342 U.S. at 152, 72 S.Ct. 181.
The United States Court of Appeals for the Third Circuit reached the same conclusion in Evening News, which involved a group of news dealers who tried to force a newspaper to eliminate home delivery of some of its newspapers by newsboys. The newspaper sued the dealers, alleging violations of §§ 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2). The dealers argued, as the plaintiffs argue here, that their relationship with the newspaper was intrastate in nature because they delivered newspapers only within their home state. The Third Circuit disagreed with the dealers:
“The truncated argument advanced would have us forget completely that interstate commerce is an inseparable, indispensable part of this ... newspaper. The News does furnish neighborhood, city, county and state news to its readers. And by far the major portion of its sales are in New Jersey. But an essential element of its being (perhaps considering its territory and the present state of this world of ours its most essential element) is the obtaining, dissemination and interpretation of national and world-wide news. Intrastate advertising is necessary to the economic life of the paper and necessary to its readers. Interstate advertising affects the paper and its readers to a lesser degree but affect them it does appreciably. To place that news and advertising in the *469 hands of New Jersey people requires, as the United States Supreme Court said in [Lorain], ‘continuous interstate transmission of materials and payments to say nothing of the interstate commerce involved in the sale and delivery of product[s] sold.’ The end result, the distribution of the News, as a complete newspaper containing those news items and advertisements, to its reading public in Newark or any other New Jersey area is, as the Court held in [Lorain], ‘... an inseparable part of the flow of the interstate commerce involved.’ ”
263 F.2d at 717.
The Third Circuit found that “home delivery of the News is an integral part of the interstate operation.” 263 F.2d at 717. We agree with the Third Circuit’s application of Lorain, and we conclude that the cases of the plaintiffs now before us are not materially distinguishable from either Lorain or Evening News.[1]
The petitions for the writ of mandamus are due to be denied. The trial court properly directed arbitration pursuant to the arbitration clauses in the Agreement because the plaintiffs were integral and inseparable parts of the flow of interstate commerce. Lorain and Evening News.
1990418 — WRIT DENIED.
1990419 — WRIT DENIED.
HOOPER, C.J., and MADDOX, BROWN, and JOHNSTONE, JJ„ concur.
HOUSTON, J., concurs specially.
COOK, LYONS, and ENGLAND, JJ., dissent.
SEE, J., recuses himself.

. We note that we have carefully examined all of the cases cited by the plaintiffs in support of their contention that the flow of interstate commerce ended when the inserts and the news were delivered to The News. We find those cases to be either distinguishable on their facts or otherwise consistent with the holdings in Lorain and Evening News.